### CHARLEY NICKS v. THE STATE.

#### No. 1918. Decided December 7, 1898.

1. **Agreement to Turn State's Evidence—Failure to Comply With the Agreement.**

A defendant in a prosecution for theft, entered into an agreement with the prosecuting attorney to turn State's evidence against his codefendants upon condition that, before he went upon the witness stand in the district court the said attorney would give him all the protection the law afforded. He testified before the grand jury and on the habeas corpus trial of the parties, but positively refused to testify in the district court when the cases were called for trial. Held, he was not exempt from prosecution, as he had violated his agreement.

2. **Bill of Exceptions—Signature and Approval of Judge—Practice on Appeal.**

A bill of exceptions will not be considered on appeal if the record fails to show the signature and approval of the same by the trial judge.

3. **Confession by a Convict.**

It is no objection to a confession that the party making it was in the penitentiary when he made it, provided he had been properly warned before he made it. Nor is such confession inadmissible because it was used by the grand jury to indict other parties.

4. **Witness—Pardoned or Unpardoned Convict.**

A pardoned or unpardoned convict can testify in his own behalf. Following Williams v. State, 28 Texas Criminal Appeals, 301.

5. **Confession—Charge as to.**

Where the charge of the court authorized the jury to disregard a confession if they thought proper to do so, and then consider the sufficiency of the circumstances in the case independent of the confession, the charge was favorable to defendant and he has no ground of complaint in the premises.

6. **Corpus Delicti—Confessions.**

It is well settled that the corpus delicti can not be predicated alone upon the confessions of a defendant, but it is equally as well settled that the confession can be used along with the other circumstances in the case to establish the corpus delicti.

7. **Confession—How Considered by Jury.**

It is a sound rule that a jury are not compelled to believe all of defendant's confession. They may believe only a part and discard the remainder.

8. **Theft of Horse—Evidence Sufficient.**

See opinion for facts stated which the court hold amply sufficient to support a judgment of conviction for horse theft.

40th Crim. Reps.—1

APPEAL from the District Court of Walker. Tried below before Hon. J. M. SMITHER.

Appeal from a conviction for horse theft; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Powell, Ball & Randolph,* for appellant.—The record discloses three errors fatal to this conviction, which we will notice briefly, as follows:

1. The defendant should not have been required to plead to the indictment in this case after the State's agreement with him as shown in statement under first assignment of error, and the more so when all the evidence adduced upon the trial of said cause was gotten from defendant with the understanding that the same would be used against other parties. Neely v. State, 27 Texas Crim. App., 324; Lauderdale v. State, 31 Texas Crim. Rep., 46.

2. The evidence adduced upon the trial of this cause was inadmissible, because the statements of a convicted felon while under the disability of said conviction, and while confined within the State penitentiary. Long v. State, 10 Texas Crim. App., 186; Perez v. State, 10 Texas Crim. App., 327.

3. Even if this court should hold that defendant was properly prosecuted in this case, and that said evidence, though that of a convicted felon, was admissible, still the conviction could not stand, as there was no evidence adduced upon the trial of said cause connecting or tending to connect defendant with the alleged theft, other than his own confessions alone, which, under the peculiar circumstances by which they reached the jury, should have been corroborated to sustain a conviction.

*John C. Williams* and *Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of horse theft, and his punishment assessed at confinement in the penitentiary for a term of five years; hence this appeal.

When the case was called for trial, appellant suggested to the court, in a written plea, that he had made an agreement with the prosecuting officers to testify in behalf of the State against T. Van Goodrum, George Townsend, and Joe Robinson, who were charged with the theft of the same animal set out in the indictment herein; that, in pursuance of said agreement, he had testified in the case on habeas corpus trial, and before the grand jury, at the term of the court at which the bills against the other defendants were found. To this the State replied that there was an agreement entered into by the State, represented by the district attorney and John C. Williams, who assisted in the prosecution, to the effect that if appellant would testify on each and every trial against said Van Goodrum, Townsend, and Robinson in the indictments growing out of this transaction, and produce sufficient true testimony to corroborate his

statement and confession, then, and in that event, the State would not prosecute him for the theft of this horse. When the cases were called for trial in the District Court, appellant violated this agreement, and refused to testify, and because of his refusal to so testify the cases against said parties had to be dismissed for want of sufficient evidence to convict. Testimony in regard to this matter was introduced. The agreement was as follows: "Huntsville, Texas, Aug. 13, 1897.—I hereby certify that I have authority to and will enter into an agreement with Charles Nicks, before he goes on the witness stand in the District Court in this county to testify in the case of State of Texas v. Van Goodrum et al., for the theft of Mrs. Lockett's mare, and will give him all the protection the law guaranties to witnesses who turn State's evidence, on condition that the statements which he has made concerning same to Sheriff Hunter and myself prove to be true, and are corroborated by the evidence of the other witnesses for the State. (Signed) Jno. C. Williams."

Charley Nicks being sworn, stated that Mr. Williams, representing the State, made an agreement with him that, if he would testify against Van Goodrum, George Townsend, and Joe Robinson, he would not be prosecuted for the theft of the Lockett mare. He read to him a part of a letter from Mr. Scott, the district attorney, authorizing him to represent the State in the matter. He then gave him the writing above set out, and said that he would make such an agreement. He also stated: "I testified on the habeas corpus trial of Van Goodrum and others, and also before the grand jury, according to my agreement, and upon my testimony true bills were found against said parties. I was not offered as a witness at this term of the court. Every time I have been offered as a witness I have testified. I told Mr. Williams and Mr. Scott, the district attorney, that I would not testify in the cases against Van Goodrum and others. They did not swear me. I told them this the other day in the jury room of the courthouse. I told them this when they took me, with other State witnesses in the Van Goodrum cases, out to consult as to what our evidence would be in said case. The cases against Van Goodrum and others had been called, and the court was waiting for the State to answer." This was the condition of the record with reference to agreement in regard to this matter. It has been held that, where a party turns State's evidence under an agreement, and carries out his contract in good faith, he is entitled to a dismissal of the case as to himself; in other words, that such an agreement, properly entered into and faithfully executed by the party turning State's evidence, entitles him to a dismissal of his case. In Camron v. State, 32 Texas Criminal Reports, 180, it was said: "But it would seem that the power of dealing with such agreements lies primarily with the prosecuting officer, and in Texas he may act with the consent of the court, and we see no good reason why, when a defendant has in good faith carried out his agreement, the labor and expense to the State of a solemn trial should be incurred for the purpose of remitting the defendant to his remedy of pardon, to which, it is admitted, he is entitled as a matter of right. If the State can make a

contract with the defendant for immunity from prosecution for his offense, it is due to her own dignity that the contract be carried out in perfect faith." It is the recognized practice in Texas that the district attorney or the prosecuting officer may permit one or more parties accused of crime to turn State's evidence, and use him or them as witnesses against his codefendants; and the statute authorizes such officers to dismiss any prosecutions, with the consent of the trial court. It is also a practice, recognized in our courts, for the district attorney, with the concurrence of the court, to enter dismissals in this character of case, when it is deemed essential to the ends of justice that the parties whose cases are dismissed should turn State's evidence against their confederates. Camron v. State, 32 Texas Crim. Rep., 180, and authorities cited. So where the district attorney enters into such an agreement and the party turning State's evidence carries out in good faith his part of the contract, it would seem to terminate his prosecution. But, in order to entitle the defendant to such dismissal, he must in good faith carry out his agreement. In Neeley's Case, 27 Texas Criminal Appeals, 324, the contract was violated by the party who agreed to testify, and he was placed upon trial and convicted, over his protest. The court in that case said: "Having violated his agreement to testify in behalf of the State, the defendant was not entitled to exemption from prosecution by virtue of said agreement. It is well settled that where a particeps criminis, for the purpose of securing exemption from prosecution, agrees to testify in behalf of the State against his accomplice in crime, and violates such agreement by refusing to testify, in good faith, fairly and fully to facts within his knowledge, he can not claim the benefit of such agreement, and may be prosecuted and convicted, regardless thereof. 1 Bish. Crim. Proc., sec. 1174; 1 Greenl. on Ev., sec. 379; Rosc. Crim. Ev., secs. 132, 133; Whart. Crim. Ev., secs. 443, 656; Holmes v. State, 20 Texas Crim. App., 517. So, it would seem that a defendant can claim the benefit of an exemption if he in good faith carries out his agreement, and testifies fully and fairly to the facts within his knowledge concerning the transaction; but if he does not, and violates his agreement, he can not claim such exemption from prosecution. Now, under this case, the defendant testified on habeas corpus trial and before the grand jury that presented the bills, but when the cases were called for trial in the District Court he positively refused to carry out his agreement and refused to testify against his confederates. He has not placed himself in position to claim exemption from prosecution. There was no error committed by the court in regard to this matter.

There is also in the record what appellant terms his "second bill of exceptions," reserved to the action of the court permitting John C. Williams, attorney for the State, to reproduce before the jury the confession of appellant made while a convict in the State penitentiary. This purported bill states that appellant had been duly and legally warned before making the confession. The grounds of objection are: "First, that appellant was a convict in prison; second, that it was made for the

purpose of getting a pardon; and third, that the confessions were used to indict other parties, and he was promised immunity from punishment." As presented, this bill can not be considered, because it was not approved by the judge; at least, the record fails to show the signature and approval of the judge to said bill of exceptions. But if it had been approved, as presented, it would not have afforded ground for reversal. It is not an objection to a confession that the party making the confession was a' State convict, confined in the penitentiary, at the time of making the confession, if he had been properly warned prior to making said confession. This confession was only used against this defendant. It was not sought to be used against other parties. Appellant seems to contend that, because he was not then a competent witness against others, therefore his confession could not be used against himself. This is not a correct position. It has been expressly decided in this State, and by this court, that a convict, or an unpardoned ex-convict, can testify in his own behalf. Williams v. State, 28 Texas Crim. App., 301. He was a competent witness in his own behalf.

The second ground, to wit, that defendant made the confession in the hope of securing a pardon, is stated as a ground of objection, and not recited as a fact. If we recur to the statement of facts, it shows that said confession was not made for that purpose, and that no pardon was promised him by Williams to induce him to make the confession. Nor would it be a ground of objection to the admission of this confession that the grand jury had considered said confession in securing indictments against other parties. Even if that was a fact, the statement of facts discloses that subsequent to the confession, and after the State had determined to use appellant as a witness in the cases against Van Goodrum and others, they sought and obtained his pardon; but Williams' testimony excludes the idea emphatically that this ever entered into any of the confessions, and there were four or five of them. The testimony further shows that, by means of this confession, the matters stated therein were traced up, and the corroborating circumstances obtained and ascertained to be true. We understand that even if he had not been warned, and by means of said confession the facts were found to be true, it would still be admissible. But he was duly and legally warned, without any compulsion, persuasion, or hope or inducement held out to him to make said confession. We have made these remarks thinking perhaps that the clerk, in copying the purported bill of exceptions, omitted the signature and approval of said bill by the judge below.

One of the grounds of the motion for a new trial is based upon an alleged erroneous charge of the court, to wit: "In this case, as to the theft of said horse, outside of statements testified to as having been made by defendant, and admitted in evidence before you, and to be considered by you, and given such weight as, upon the consideration of the entire evidence, you may deem the same entitled to, the State relies upon circumstantial evidence," etc.; and then follows a charge upon circumstantial evidence. The clause quoted is objected to in the motion for new

trial as not being the law. When taken in connection with the charge on circumstantial evidence, we believe this charge was beneficial, and was intended to be beneficial, to the defendant. This authorized the jury, if they saw proper to do so, to disregard the confessions, and then consider the sufficiency of the circumstances in the case, independent of said confessions. The only objection to this charge is that it was not applicable to the facts of this case. We do not think there is any merit in this contention, but that the charge, as before stated, was favorable to the defendant.

It is also contended that the evidence is not sufficient to support the conviction. In our judgment, this is the most serious question in the case. It is a well-settled rule that the corpus delicti can not be predicated alone upon the confession of the defendant. It is equally well settled that the confession of the defendant, along with other circumstances in the case, can be used to establish the corpus delicti. The defendant's confession, in effect, is that, with himself, Van Goodrum, Townsend, and Robinson, and Small, entered into an agreement or conspiracy to steal two horses; one of them being the horse in question, and the other belonging to Eastham. On the night of the theft the parties all met, except Small, who lived at the place where the theft was committed, and proceeded to the Trinity River, where, in accordance with their agreement, defendant and Van Goodrum turned down the river, while the other two parties went after the two horses. In further pursuance of said agreement, some time later during the same night, the parties again met at the place of separation, when Robinson, Townsend, and Small came up with the two horses. From there they went to the residence of Joe Robinson, reaching there about daylight. Here they picked the JT brand on the horse set out in the indictment, and defendant secured the other four-fifths interest in the mare from his confederates, and sold her to a cousin of his, De Loach. De Loach carried the animal thence to Freestone County, and sold her to one Cobb. Cobb traded her to Archer. Archer traded her to a school teacher, and the school teacher traded her to a negro. The witness had forgotten the name of the school teacher, and the negro to whom the school teacher had traded her. The sheriff of Walker County went to Freestone County in pursuance of this information, and ascertained that the mare had been traded as stated. He found the school teacher at a Confederate reunion near Fairfield, and the latter informed the sheriff that he had traded the mare to a negro, and directed him to where the negro lived, and there found that the animal had been traded to a doctor living near Oakwood, and that the doctor had traded her to a negro; and that near this negro's house he found and took possession of the animal. This last negro lived twelve miles northwest from Fairfield, in Freestone County. Taking the entire confession as being true, there might be a serious question as to whether appellant could be considered as a principal in the transaction, inasmuch as he stated he was not actually present at the place of the theft; that is, by his separation at the Trinity River from the parties who went on and got the ani-

mal, he thereby cut himself off from being a principal in the theft. But we take it as a sound rule that the jury are not compelled to believe all the confessions made; that they could believe part, and discard the remainder, of the confession. So, looking to the defendant's testimony, we find that Joe Robinson and others testified in the case that the animal sold to De Loach by appellant was not the Lockett mare, and Robinson testified that he never saw the Lockett mare. Robinson, it will be observed, was one of the two men whom the defendant said went from the river to where Small lived and returned with the mare. Small, Townsend, and Van Goodrum did not testify in the case. De Loach, the cousin of the defendant and the alleged purchaser from defendant of the Lockett mare, testified that he did not buy the Lockett mare, the one in question, from the defendant, and corroborates other witnesses in regard to the description of the mare that he actually did buy from defendant, which, if true, was a different animal. It is not necessary to go into the details on that phase of the case. De Loach further testified that the animal he bought from defendant was, a few days before he testified, still in Freestone County, near Fairfield. The facts show incontestably that the sheriff had recovered the Lockett mare, twelve miles northwest of Fairfield, and had returned her to her owner, who then had possession of her, in Walker County. So the jury may have discarded the statement of defendant that he had sold the Lockett mare to De Loach, and the further fact that Robinson, Townsend, and Small stole the animal, inasmuch as Robinson had denied ever seeing the Lockett mare, and De Loach testified that he had not bought said mare from the defendant. The reasonable and legitimate conclusion from the appellant's confession is that he had stolen the mare, and had himself carried her to Freestone County. Under this phase of the testimony, we believe the jury would have been justified in arriving at the conclusion that appellant was the party who was guilty of actually taking the animal. So, it will be seen that we not only have the defendant's confession, but we have facts stated by him as to where the mare was, and the different parties who owned the mare after she had been carried to Freestone County, and these facts corroborated by witnesses as to their truthfulness. These facts, taken with the further fact that the mare disappeared from the ranch where she was kept (she being an unbroken 4-year-old mare), and was carried by somebody from Walker County to Freestone, and the further fact that there was still evidence on said mare of the picked brand JT, which appellant says he assisted in picking, are a sufficient predicate for the jury to base a verdict. Then, if De Loach did not buy the animal from defendant, and carry her to Freestone County, we have defendant left in possession of her, under his own statement, in Walker County; and we find her later on, in Freestone County, transferred from one owner to another, as he details in his confession. So, under the authority of Kugadt v. State, 38 Texas Criminal Reports, 681, and authorities there cited, we believe the corpus delicti is sufficiently established. In cases of this character, we believe it to be a sound

rule that, where the animal has been shown to have been stolen .by somebody, the confession of the. defendant is sufficient to connect him with the theft.   As before stated, it is a settled rule that the confession, with other circumstances of the case, can be used to establish the corpus delicti.   We believe, as the record presents itself, the jury were justified in believing that the animal was stolen, and that appellant committed the theft.   The judgment is affirmed.

*Affirmed.*