WALTER YANCEY v. THE STATE.

No. 2758. Decided October 28, 1903.

**1.—Murder in Second Degree—Evidence Inadmissible—Exception to.**

See opinion for evidence stated, which, being excepted to, and the matters occurring between witness and appellant and having no reference to deceased, and having occurred hours before deceased came to town, Held, the evidence was too remote, not admissible, and the exception to same should have been sustained.

**2.—Same—Conflicting Evidence—Admission of.**

Where there is a conflict in the evidence arising from the nature of the wounds on the body and head of deceased, as to whether the homicide could have been committed with a piece of iron pipe or any other blunt instrument, and it was sought to introduce a piece of iron pipe found near the scene of the killing by the father of deceased some six or eight weeks afterward; Held, the testimony was admissible, and was, under the circumstances, matter to be weighed by the jury.

**3.—Same—Confession—Warning.**

Where there is no question as to defendant's having been previously warned, statements by him in the nature of confessions, voluntarily made after conviction, are admissible upon a new trial granted, if at the time appellant had the previous warning in mind, and so having, made the statements; Held, the fact that verdict had just been rendered against him would not preclude the admission on subsequent trial, under a proper charge upon this issue, if raised.

Appeal from the District Court of Guadalupe. Tried below before Hon. M. Kennon.

Appeal from a judgment of conviction for murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

Appellant was indicted in the District Court of Guadalupe County for the murder of Russell Eckols, on or about the 15th day of November, 1901, "by striking and beating him with a piece of iron pipe, and by then and there striking and beating the said Russell Eckols with an instrument which is to the grand jurors unknown, and which could not after careful investigation be ascertained."

Upon his plea of not guilty the jury returned a verdict of guilty of murder in the second degree, and from which verdict and judgment appellant appeals to this court.

The evidence was purely circumstantial, as will be seen from the testimony of the witnesses copied in the opinion below.

As tending to show a motive on the part of the defendant, is the testimony of Mrs. Julia Eckols, wife of Russell Eckols. The testimony of Mrs. Julia Eckols is to the effect that her husband left their home about six miles from Luling to go to Luling on the evening of November 12, 1901, between 2 and 3 o'clock, and that he had with him when he left over $100 in a long purse; that he had no purse or money on his person when he was brought home. The testimony of Henry Flores was to the effect that Russell Eckols left his home at about 2 or 3 o'clock on the evening of November 12, 1901, to go to Luling, a distance of six miles, and that he had with him when he left over $100 in a long purse. That Russell Eckols had no money or purse when he found him in the road and that none was ever recovered except a marked dime. The testimony of W. H. Nance is to the effect that he saw Russell Eckols between 5 and 6 o'clock on the evening of the 12th of November, 1901, in Munster's saloon, in the town of Luling, and that Russell Eckols had a right smart of money with him in a long purse, and that he saw a negro that looked like defendant in the saloon, who seemed to be watching Russell Eckols. The testimony of Dr. J. J. McCullom is to the effect that Russell Eckols often deposited money with him, but that he did not deposit any money with him on November 12, 1901. John Criss testified that he saw defendant about sundown on the day of the murder crossing the Aransas Pass Railroad track going towards San Marcos River; that the road on which he saw defendant was the Luling and Belmont road; that he saw defendant with a piece of iron pipe in his hand, and that the piece of pipe he saw in defendant's hand looked "just about like the piece of pipe shown him" (that found near the place of the killing).

No further statement necessary.

*Adolph Seideman,* for appellant.

*Howard Martin.* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at imprisonment in the penitentiary for twenty-five years.

The case is one of purely circumstantial evidence. The sufficiency of the evidence to support the conviction is one of the points relied upon for reversal. Under the disposition to be made of the case we pretermit a discussion of the facts upon this suggestion of appellant.

The killing occurred some time during the night. Deceased lived six

miles nearly south of Luling. He left home about 2 or 3 o'clock on the evening preceding the homicide at night, and went to the town of Luling, leaving Luling, on his return, some time about 6 o'clock p. m., or a little later. The theory of the prosecution is that deceased was killed for the purpose of getting some money which was upon his person, and that appellant was placed in possession of the fact or maybe had seen deceased with the money on his person or in his hand in the town of Luling late in the evening, and that he preceded deceased home, living in the same neighborhood, and laid in wait for him, and committed the homicide for the purpose of securing the money. If the contention of the State is correct that appellant was aware that deceased had the money, this information came to him about 6 o'clock in the evening in the town of Luling. The witness Criss testified that, between 10 and 11 o'clock in the morning before the homicide at night, he had a conversation with appellant in the town of Luling, in which appellant asked him whether he (witness) knew any one who had land to rent. He was answered in the affirmative, and pointed out such a man, by the name of Lucas. Appellant did not speak to Lucas, but walked away. Appellant then asked witness Criss "to set them up." Witness replied he had the money, and to this statement appellant made the following answer: "What? A man around town as you are and not have any money. Follow me, and I will show you a money-making scheme and we will have money." This testimony was excepted to for various reasons stated in the bill. The exceptions should have been sustained. This testimony was not admissible. It was a matter occurring between witness and appellant without any reference to deceased Eckols; nor does it give point to the fact that he intended to obtain money from deceased in any way, or that deceased was in his mind; and it occurred seven or eight hours before he is claimed to have had any knowledge of the fact that deceased had money, and hours before deceased had even reached Luling, or had started in the direction of Luling from his home.

Another bill of exceptions was reserved to the admission of evidence that about six or eight weeks after the death of deceased, witness Ward and the father of deceased were passing the scene of the homicide; and that the father, not wishing to pass the spot, crossed the fence and passed around the place, and in a field, about nine steps from where the homicide is said to have been committed, they found a piece of galvanized iron pipe, which was produced and identified before the jury, and which was similar to such a piece of galvanized pipe seen in appellant's possession in Luling the evening preceding the homicide. The theory of the State was that the homicide was committed with a piece of galvanized iron pipe. The testimony is conflicting from the nature of the wounds on the body or head as to whether the homicide could have been committed with a pipe or any other blunt instrument. In fact, the testimony seems to have been sharply conflicting on this point. We are of opinion this testimony was admissible, and that,

under the circumstances, was a matter to be weighed by the jury; that the question was one not so much as to its admissibility but of its weight. For the first error discussed we believe the judgment should be reversed.

There is a question suggested by the State in regard to the action of the court rejecting the admission or confession of appellant. The evidence sought to be introduced was as follows: By the witness McKean, that appellant stated to him, "Sidney Young is just as innocent of that crime as you are. He had nothing to do with it and ought to be turned loose. There was a fine-haired white man in that thing, too." That the witness Duke would testify to the same facts, and would add that appellant, after stating "there was a fine-haired white man in that thing, too," stated "that he put me on to Eckols having that money." Sidney Young was also under indictment for the homicide. The State sought to introduce this, as before stated, as an admission or confession of guilt. Appellant had been in jail for some time, and had just prior to the statement been convicted of this offense, and his punishment assessed at a life term in the penitentiary for murder in the first degree. That en route from the courthouse to the jail this statement of appellant was made to the officers, Duke being the sheriff, and McKean his deputy. Upon motion it seems a new trial was awarded, and subsequently this conviction obtained. While in jail appellant had been frequently warned that any statement he might make could be used against him; but he had persistently declined to make any statement until after the first conviction as above stated. The last warning given by the officers occurred from twenty to twenty-four hours before making the statement above quoted. The trial court appends this statement to the bill: "This bill is approved, and in case the judgment is reversed, the trial court respectfully requests the Court of Criminal Appeals to pass upon the question involved in this bill, which briefly is thus: Are statements, in the nature of confessions, admissible in evidence against defendant, voluntarily made, when made after conviction, unless he is also warned after conviction, and having in view a possible subsequent trial?" We have deemed it proper under the circumstances to answer this bill. There being no question of the warning, we would say that the confession or admission is admissible if at the time it was made appellant had the warning in mind, and the statement was made with that warning in mind. The fact that it was twenty to twenty-four hours between the last warning and the statement or confession would not necessarily preclude its admission. Adams v. State, 35 Texas Crim. Rep., 285; Hamlin v. State, 39 Texas Crim. Rep., 579. The main question to be looked at with reference to the admission under the peculiar circumstances of this case would be, whether or not appellant at the time he made the statement made it in view or had in mind the previous warning or warnings. The fact that the verdict had just been rendered against him would not preclude the

45 Crim.—24.

admissions upon a subsequent trial, so far as we are advised from the authorities. In Nicks v. State, 40 Texas Crim. Rep., 1, the confessions or admissions of a convict were held to be admissible against him in a future trial; but this was in regard to another case than the one in which he was then serving his sentence. The statute does not place such restrictions upon the admissions or confessions. The warning in cases of this peculiar character are governed by the statute. Appellant asked and obtained another trial in this particular case. So, we hold that, under all the circumstances; if the trial court should become satisfied that defendant made the statement with the previous warning in view or in mind, it would be admissible, and the fact that it may have been twenty to twenty-four hours prior to the making of the statement would not render it inadmissible. This may become an issue as to whether appellant had the warning in mind, and in such event, it should be submitted under proper charge.

For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*