## Ex Parte J. D. Copeland.

No. 6934.   Decided March 29, 1922.

Rehearing Denied April 26, 1922.

#### 1.—Contempt—Witness—Grand Jury—Rule Stated.

It is clear that if a given answer does not involve that which incriminates the person to whom it is addressed, such answer may not properly be withheld by a witness called to testify before the grand jury.

#### 2.—Same—Witness—Discretion of Judge—Rule Stateu.

The witness, as will be seen, is not the exclusive judge as to whether he is entitled on this ground to refuse to answer. The question is for the discretion of the judge, who must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence. Following Ex Parte Park, 37 Texas Crim. Rep., 594.

#### 3.—Same—Rule Stated—Witness not Exclusive Judge of Question.

Manifestly, a claim that an answer is refused because criminating cannot be held as established by the naked assertion of such fact; and is equally plain that to leave this matter to the *ipse dixit*, of one who for one or all of many motives might not wish to give evidence would be to withhold from the State all testimony of friends of the accused, or those who might be interested in defeating the ends of justice.

#### 4.—Same—True Rule—Witness—Judge—Incriminating Evidence.

The true rule is that it is for the judge before whom the question arises to decide whether an answer to the question put may reasonably have the tendency to criminate the witness, or to furnish proof of the link in the chain of evidence necessary to convict him of a crime.

#### 5.—Same—Case Stated—Witness Before Grand Jury.

We are unable to see upon what ground relator, a witness before the grand jury, can support the proposition that he refused to answer because such answers would tend to criminate him, when immediately he declares that he had no criminal connection with any of the matters inquired about.

#### 6.—Same—Constitutional Right—Immunity—Compelling Witness to Testify

While the Bill of Rights declares that one accused of crime cannot be compelled to give evidence against himself, and the courts have always respected this mandate, yet it has been uniformly held that it was not violated by compelling one to give incriminating testimony against himself when by adequate authority he was given immunity from prosecution. Following Young v. State, 45 Texas Crim. Rep., 202, and other cases.

#### 7.—Same—Immunity—Rule Stated—Witness Bound by Action of Court.

The point raised by relators that while the State may be bound by appropriate action of the district attorney and the trial court, it is not competent for the court to compel one to give his testimony under such

guarantee, but that notwithstanding the immunity thus tendered he would have the right to maintain his silence, is untenable.   Following Hughes v. State, 62 Texas Crim. Rep., 289, and other cases.

### 8.—Same—Immunity by Statute—Immunity by Court—Witness Must Answer.

The soundness of the contention that one guaranteed immunity by statute may be compelled to give testimony, but one guaranteed immunity by the court may not be so compelled, is not apparent.   Following Ex Parte Muncy, 72 Texas Crim. Rep., 541, and other cases.

### 9.—Same—Immunity—State and Federal Jurisdiction—Real Danger.

The reason urged that relator should not answer the questions because the State court and district attorney had no right to guarantee immunity from Federal prosecution, has such a shadowy and uncertain basis that it scarcely needs discussion, and the protection against self-incrimination is confined to real danger, and not to remote possibilities.

From Travis County.

Original Habeas Corpus proceedings, asking release from arrest under a warrant for contempt for refusing to testify before the grand jury.

The opinion states the case.

*Douglass & Carter, Lon Curtis, Hart & Patterson, Garrett, Brownlee & Goldsmith,* for relator:—The question here involved is,—Has the district attorney with approval of the court by any known law of legislative authority been given "adequate authority" to compel one to give incriminating evidence upon tendering immunity when such tender is not accepted.   It will be conceded that we have no statute which confers any such authority upon the district attorney and district court.   It is a very interesting as well as peculiar fact that the legislative branch of our State Government has never seen fit to confer such extraordinary and inquisitorial power upon prosecuting officers in this State.   As to the rights of the citizen under discussion, and that it was the intention of the framers of our organic law to guard and protect the citizen against its usurpation, it is ordained in Article 1, Section 29, that: "To guard against transgression of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of Government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void."   Baker v. State, 158, S. W. Rep., 998; U. S. v. Wilson, 7 Peters 150; U. S. v. Brasley, 268 Fed., 63; Goulch v. U. S., 41 U. S. Sup. Ct. 261; Dissenting in Muncy, 163 S. W. Rep., 29, and cases stated in opinion.

This rule (U. S. v. Burr, 242 Fed.) was quoted and adopted by the Supreme Court of this State in the case of Floyd v. The State, 7 Tex. 215.   In the case of Ex Parte Wilson, 47 S. W. 999, after quoting Article 438 (old Article 426) of our Code of Criminal Pro-

cedure, this court in referring to this Article said: "From this it will be seen that when the witness refused to testify he is brought before the judge as was done in this case; and it is then the duty of the judge to determine from the nature of the question and the surroundings, whether or not the answer of the witness will tend to incriminate him. *But the decision of the judge is not conclusive.* The witness is the *final arbiter of this question,* as he alone can know whether the answer will tend to criminate him."

As to the rights of the relator in the Wilson case, this court further said: "In this case applicant was brought before the court and no matter what may have occurred before the grand jury, when he then informed the court that he declined to answer the question or produce the bill of sale, because his answer or the production of he said bill of sale would tend to incriminate him, it was the duty of the court to entertain his objection."

*R. G. Storey,* Assistant Attorney General, and *J. B. Robertson,* District Attorney.

Did the said witnesses, by answering all questions asked with reference to their participation in or responsibility for the infractions of law involved herein, waive their right to refuse to answer fully other questions submitted? Upon this question the Court is referred to: Ex Parte Park, 37 Tex. Crim. Rep. 590; Ex Parte Adams, 174 S. W. Rep., 1044; Brown v. Walker, 161 U. S. Sup., 597.

If it should be held that under the circumstances it reasonably appeared that the witness would be privileged to refuse to answer said questions on the ground of self-incrimination, then could he be compelled to answer them if the district attorney, with the approval of the court, granted him immunity from prosecution, as shown by the record. Hughes v. State, 62 Texas Crim. Rep., 293; Ex Parte Muncy, 163 S. W. Rep., 29; Ex Parte Napoleon, 144 S. W. Rep., 269; Ex Parte Barnes, 166 S. W. Rep. 728; Ex Parte Higgins, 160 S. W. 696; Ex Parte Andrews, 51 Tex. Crim. Rep., 79; Sovereign Camp v. Bailey, 163 S. W. Rep., 685; Brown v. Walker, 161 U. S. 591; Jack v. Kansas, 199 U. S. 372; Hale v. Henkel, 201 U. S., 68; Glichstein v. U. S., 122 U. S., 141; Mohawk Overall Co. v. Hooker, 235 U. S. 685; Shewalter v. Ry., 239 U. S., 630.

The law is unquestionably laid down in the majority opinions and decisions of the Court of Criminal Appeals of Texas, and in the other cases cited above, that a witness can be compelled to answer questions that would incriminate him, if he be given immunity by the district attorney, with the consent and approval of the district judge, and the fact that the answer might tend to disgrace or embarrass the witness, or might expose him to civil suits etc., will not excuse.

LATTIMORE, Judge.—By an order of the Criminal District Court of Travis County, relator was adjudged in contempt of said court by reason of his refusal to answer certain questions propounded to him by the grand jury of said county, he having been directed by said court to answer said questions and having refused so to do.

No question has been raised of the fairness or legal manner and form of any procedure antecedent to the entry of such judgment of contempt, and we are thus relieved of any need for discussion of these matters, and are brought at once to the substantial contentions made by relator. No question is raised in the brief of relator of the fact that the matters under investigation were properly within the. scope of a grand jury inquiry, and only those of the subjects of the investigation will be mentioned as may be necessary to clarify our opinion.

Letters had been mailed and delivered in Travis County, Texas, to various parties, among them one Jeadie Janes, in which the parties addressed were admonished to refrain from certain lines of conduct such as bootlegging, gambling, associating with prostitutes, etc., most of said letters concluding with some statement to the effect that no further warning would be given, and some of them, as in the case of Janes, ordering the recipients to leave Travis County or suffer the consequences. All of said communications were on stationery with a lithographed letterhead, upon which appeared the following. "Knights of the Ku Klux Klan, Capital City Lodge No. 81, Austin, Texas. Printed by the Ku Klux Klan Press, Atlanta, Ga." None of said communications were signed but each bore the imprint of a seal upon which was the following inscription: "Knights of the Ku Klux Klan. Capital City Lodge No. 81, Austin, Texas." Janes paid no attention to said communication. Shortly after its receipt by him he was seized on a street of Austin, Texas, by a group of men, forcibly placed in a car and carried to a point outside of the city limits and there asked if he had received the communication above mentioned, to which he replied in the affirmative and also stated in answer to further questions that he did not know why he had not heeded its warning. His clothing was then removed from the upper part of his body and he was severely whipped and a coat of tar and feathers applied, and he was brought back to said city and set at liberty on a public street thereof.

That the grand jury was properly investigating the above matters with others, and that same constituted offenses against the laws of the State of Texas and that the answers to the questions asked were material, would seem to be without question. The record shows that relator, while a witness before said inquisitorial body was asked the following questions:

(a) Are you a member of the Ku Klux Klan of Austin or Travis County, Texas?

(b) Have you ever attended meetings of the Ku Klux Klan of Austin or Travis County, Texas?

(c) What persons have you seen at those meetings which you have attended?

(d) Give the names of all members of the Ku Klux Klan in Travis County, Texas.

(e) Who are the officers of the Ku Klux Klan in Austin or Travis County, Texas?

Relator refused to answer said questions and each of them, upon the ground that the answers would tend to criminate him. Thereupon the State, through its district attorney and with the approval of the district judge, evidenced by an order fully reciting the matters of such interrogation and duly entered of record, promised and guaranteed to relator complete immunity from prosecution for any offense connected with the matters so asked about or that might be ascertained as the result of his answers to said questions. In this connection the record discloses that relator also admitted and stated that he had no personal connection with or knowledge of the sending of any of said letters or the transaction wherein said Janes was treated as above set forth, or any of the other matters before said Grand Jury at the time of any of such occurrences or prior thereto. When offered immunity relator raised the question of the scope and extent of the power of the State to grant him immunity from Federal as well as State prosecution for any offense involved; affirmed his refusal to accept any proffered contract to testify in return for such offered immunity; also his right to determine that said answers would incriminate him, and further declined to answer any of said questions, which action on his part was followed by the judgment of contempt, from restraint under which, relief is here sought. ·

Certain questions arise under the above facts, which are before us without dispute. Would the answers of relator incriminate him? If so, could the State, after offer of immunity, which was not accepted by relator, compel him to answer? Would the State's guaranteed immunity extend to relator's protection also from Federal prosecution if this were involved?

Reverting to the first question just stated, it is clear that if a given answer does not involve that which incriminates the person to whom it is addressed, such answer may not properly be withheld. We are discussing a case involving only the objection to giving such answer, that it would incriminate.

Who is to decide whether the answer so withheld, is or would be incriminating? In Ex parte Park, 37 Texas Crim. Rep. 594, this court said:

"Was the question of such a character, under the conditions then surrounding the defendant, as to other offenses of like character then pending against him, as would tend to criminate him as to said of-

fenses? We hold that this matter is, in the first instance, to be determined by the court or judge; that is, 'it must appear to the court from the character of the question and the other facts adduced in the case that there is some tangible and substantial probability that the answer of the witness may help to convict him of a crime. The liability must appear reasonable to the court, or the witness will be compelled to answer.' See, Ex parte Irvine, 74 Fed. Rep., 954, which is an exhaustive discussion of this question, and the authorities there cited; Fries v. Brugler, 12 N. J. Law, 79, reported in 21 Amer. Decs., 52 and note thereto on page 57; People v. Mather, 4 Wend., 229, reported in 21 Am. Dec., 112, and authorities cited in note thereto. We quote from Whar. Crim. Ev., Sec. 466, as follows: 'To protect the witness from answering, it must appear from the nature of the evidence which the witness is called to give that there is reasonable ground to apprehend that, should he answer, he would be exposed to a criminal prosecution. The witness, as will be seen, is not the exclusive judge as to whether he is entitled on this ground to refuse to answer. The question is for the discretion of the judge, and, in exercising this discretion, he must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence. But, in any view, the danger to be apprehended must be real, with reference to the probable operation of law in the ordinary course of things, and not merely speculative, having reference to some remote and unlikely contingency.' Mr. Wharton further says (section 469) : 'The witness is not the sole judge of his liability. The liability must appear reasonable to the court, or the witness will be compelled to answer. Thus, a witness may be compelled to answer as to conditions which he shares with many others, though not as to conditions which would bring the crime in inculpatory nearness to himself. But, in order to claim the protection of the court, the witness is not required to disclose all the facts, as this would defeat the object for which he claims protection. It is not, indeed, enough for the witness to say that the answer will criminate him. It must appear to the court, from all the circumstances, that there is a real danger, though this the judge, as we have seen, is allowed to gather from the whole case, as well as from his general conception of the relations of the witness. Upon the facts thus developed, it is the province of the court to determine whether a direct answer to a question may criminate.' And see authorities cited in notes to said sections. This rule has been followed in this State. See, Floyd v. State, 7 Texas, 215. After the court has determined from the environments and the nature of the case, so far as stated, that the answer of the witness might tend to criminate him, it is then the province of the witness to state whether or not a truthful answer to the question asked would tend to criminate him. See authorities, supra."

As far as we know the correctness of this announcement has not

been questioned by this court, and indeed we think cannot be. Manifestly a claim that an answer is refused because criminating, cannot be held as established by the naked assertion of such fact; and it is equally plain that to leave this matter to the ipse dixit of a witness, who for one or all of many motives, might not wish to give evidence, would be to withhold from the State all testimony of friends of the accused, or those who might be interested in defeating the ends of justice. In Ex parte Irvine, 74 Fed. Rep. 960, Judge William H. Taft uses the following language:

"The second question is whether the statement of the witness that his answer to the question would criminate him was conclusive, so that the court could not compel an answer thereto. The great weight of authority, as well as a due regard for the right of the community to have the wheels of justice unclogged, as far as may be consistent with the liberty of the individual, leads us to reject the doctrine that a witness may avoid answering any question by the mere statement that the answer would criminate him, however unreasonable such statement may be. The true rule is that it is for the judge before whom the question arises to decide whether an answer to the question put may reasonably have a tendency to criminate the witness, or to furnish proof of a link in the chain of evidence necessary to convict him of a crime. It is impossible to conceive of a question which might not elicit a fact useful as a link in proving some supposable crime against a witness. The mere statement of his name or of his place of residence might identify him as a felon, but it is not enough that the answer to the question may furnish evidence out of the witness' mouth of a fact which, upon some imaginary hypothesis, would be the one link wanting in the chain of proof against him of a crime. It must appear to the court, from the character of the question, and the other facts adduced in the case, that there is some tangible and substantial probability that the answer of the witness may help to convict him of a crime. Mr. Wharton, in his work on Criminal Evidence (section 466), says:

" 'We have several rulings to the effect that a witness cannot be compelled to give a link to a chain of evidence by which his conviction of a criminal offense can be furthered. This proposition, however, cannot be maintained to its full extent, since there is no answer which a witness could give which might not become part of a supposable concatenation of incidents from which criminality of some kind might be inferred. To protect the witness from answering, it must appear, from the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend that, should he answer, he would be exposed to a criminal prosecution. The witness, as will presently be seen, is not exclusive judge as to whether he is entitled on this ground to refuse to answer. The question is for the discretion of the judge, and, in exercising this discre-

tion, he must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence. But, in any view, the danger to be apprehended must be real, with reference to the probable operation of law in the ordinary course of things, and not merely speculative, having reference to some remote and unlikely contingency.'

In section 469 of the same work it is stated that the witness is not the sole judge of his liability. The liability must appear reasonable to the court, or the witness will be compelled to answer. Numerous cases are cited in the notes in support of the proposition as stated in the text.''

The opinion of Chief Justice Marshall of the Supreme Court of the United States in the celebrated trial of the United States v. Burr, 242 Fed. Cas., No. 14692 E, establishes the correctness of this principle beyond controversy.

So we are in no doubt on the question that the court before whom the contemner refuses to answer, must determine in the first instance the soundness of the contention that the answer would show or tend to show the witness penally connected with a crime. The trial court, in the instant case, has decided against relator.

The correctness of the decision of the lower court in this regard may be disputed by the witness, in which case he may bring his contention to a higher tribunal for review, but certainly well known rules require this court to uphold the correctness of the judgment of a trial court until in some sufficient way it be shown that such ruling was erroneous. Applying this reasoning to the facts of the instant case, we are forced to conclude that the judgment of the court a quo seems not only not contrary to the facts but to be entirely supported by them. The trial court was not left in doubt as to relator's criminal connection, either with the sending of the letters in question or the whipping of Janes, or any of the other matters being investigated, for relator, seemingly unafraid, positively affirmed that he had nothing to do with such transactions, and knew nothing of their being in plan or purpose until after same were consummated. The trial court would in no event be compelled to decide favorably to him, upon relator's unsupported affirmation that his reason for declining to answer a question was because the answer would tend to criminate him. Section 10 of our Bill of Rights guarantees to every citizen that he shall not be required to give evidence against himself, but he who invokes its shelter must offer substance and not shadow; must present facts and not fancies. Nothing was presented by relator save his unsupported affirmation that the answers would criminate him.

In arriving at his decision in this instance, the court below was backed and justified therein by the positive declaration of relator that he had no criminal connection with the matters under investigation. What then? Can relator refuse answers whose effect would

criminate others? Clearly not so. As is said in a note to McGorray v. Sutter, 24 L. R. A. (N. S.), 169:

"The privilege against self-crimination cannot be put forward for a purely fanciful protection of the witness against an imaginary danger, and for the real purpose of securing immunity to some third person who is interested in concealing the facts to which he would testify. Brown v. Walker, supra; United States v. Collins, 145 Fed. 709; People ex rel. Akin v. Butler Street Foundry & Iron Co., 201 Ill. 236, 66 N. E. 349; State v. Duffy, supra, Re Moser, 138 Mich. 302, 101 N. W. 589, 5 A. & E. Ann. Cas. 31; People ex rel. Lewisohn v. O'Brien, 176 N. Y. 253, 68 N. E. 353.''

We are unable to see upon what ground relator can support the proposition that he refused to answer because such answers would tend to criminate him, when immediately he declares that he had no criminal connection with any of the matters inquired about.

With reference to the proposition of whether relator might refuse to answer said questions after being guaranteed immunity, we observe that in the Bill of Rights, it is declared that one accused of crime shall not be compelled to give evidence against himself. Const. of Texas, Art. 1, Sec. 10. The courts have always respected this mandate, but have uniformly held that it was not violated by compelling one to give incriminating testimony against himself when, by adequate authority, he was given immunity from prosecution. We have statutes granting immunity. Speaking of one of these, this court says:

"The statute was enacted for the purpose of forcing witnesses to testify in behalf of the State. He cannot plead that rule of evidence which does not permit a witness to incriminate himself, because when he testifies he is exonerated from punishment, and the incriminating testimony can never be used against him. The mere fact that the participant is required to testify for the State exonerates him from punishment, and it is wholly immaterial whether it is before the arrest of himself or any of the parties, or subsequent to their arrest.'' (Griffin v. State, 43 Texas Crim. Rep. 432.)

It has long been the practice to extend immunity through the action of the district attorney with the sanction of the trial judge. Immunity so extended has uniformly been held binding upon the State. Young v. State, 45 Texas Crim. Rep. 202; Cameron v. State, 32 Texas Crim. Rep. 180; Barrara v. State, 42 Texas Rep. 260; Bowden v. State, 1 Texas Crim. App. 143; Fleming v. State, 28 Texas Crim. Rep. 324.

The point is here raised that while the State may be bound by appropriate action of the district attorney and the trial court, it is not competent for the court to compel one to give the testimony under such a guarantee, but that notwithstanding the immunity thus tendered, he would have the right to maintain his silence. This view was rejected by this court in Hughes v. State, 62 Texas Crim. Rep. 289; Ex parte Napoleon, 65 Texas Crim. Rep. 307; Ex parte Higgins, 71

Texas Crim. Rep., 618; 160 S. W. Rep. 696; Ex parte Muncy, 72 Texas Crim. Rep. 541. In these cases, it was held that by virtue of the statutes of this State, it was within the power of the District Court to compel one to testify, although his testimony tends to show that he had transgressed the criminal laws of the State, where he was guaranteed immunity by the promise of the district attorney with the sanction of the trial judge duly entered of record. The soundness of the contention that one guaranteed immunity by statute may be compelled to give testimony, but one guaranteed immunity by the court may not be so compelled, is not apparent. It is combatted in the case of Ex parte Muncy and others, to which reference has just been made. If the constitution guarantees the right to keep silent though immunity be tendered, it would seem that such right would prevail against a statute as well as against a court. A right founded upon the constitution would be equally invulnerable against either a statute or a court. The converse is also true, and an admission that the right must yield to immunity when tendered by virtue of a statute would seem to concede that it would equally yield when tendered by any other instrument of government having authority to bind the State. The purpose of immunity is to protect the accused in his constitutional privilege against subjecting himself to prosecution resulting from his own disclosures, and at the same time secure for the State the benefit of such testimony. Ruling Case Law, Vol. 28, Sec. 27, p. 440. That the completeness of this protection removes the privilege of silence is exemplified in the declaration of Presiding Judge Davidson, of this court, in writing the opinion in the case of Griffin v. State, 43 Texas Crim. Rep. 432, referring to a statute, wherein he said:

"He cannot plead that rule of evidence which does not permit a witness to incriminate himself, because when he testifies he is exonerated from punishment, and the incriminating testimony can never be used against him."

This was said in a case where a statute was under consideration, but a like declaration is found in the case of Cameron v. State, 32 Texas Crim. Rep. 183, with reference to an immunity extended by a court. In either case, the immunity being complete, the reason for silence contemplated by the constitution fails. The witness being fully protected, danger from disclosure no longer exists. This much we have said in view of the argument of the counsel for relator, though the conclusion we reached upon the first proposition discussed would seem to obviate the necessity, and perhaps the propriety of discussing the constitutional question at all. This we say for the reason that the questions propounded to the relator, not being such as could, under the facts revealed by the record, elicit any testimony tending to incriminate him, he is not interested in whether the court might,

in a given and proper case, compel one to give incriminating testimony against himself.

The further reason urged that relator should not answer the questions because the State court and district attorney had no right to guarantee immunity from Federal prosecution has such a shadowy and uncertain basis that we scarcely deem it necessary to discuss it.

"The costitutional protection against self-incrimination is confined to real danger, and does not extend to remote possibilities out of the ordinary course of law." (Mason v. U. S., 6 Lawyers Ed., 362, and cases cited.)   In Mason's case, supra, we find the following quotation also :

"We are of the opinion that the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things,—not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct."

If the question is raised by the record before us, we think the cases of Jack v. Kansas, 199 U. S. 372, 4th Am. & Eng. Cases, 689 ; Hale v. Henkle, 201 U. S. Rep. 68, and Brown v. Walker, 161 U. S. Sup. 597, settle it adversely to relator's contention, and that "immunity" must be in regard to a prosecution in the same jurisdiction, and when same can be and is fully given, it is enough.   28 Ruling Case Law, p. 442.

For the reasons above set forth, the relief prayed for must be denied and relator will be remanded to the custody of the respondent as under the judgment of the District Court of Travis County.

*Relator remanded to custody.*

(Judges all present and concurring.)

Motion for rehearing overruled April 26, 1922.—REPORTER.