**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Carlos A. FERNANDEZ, Defendant-Appellee.**

**No. 27750.**

United States Court of Appeals,
Fifth Circuit.

April 15, 1970.

---

Jimmy L. Tallant, Criminal Section, Tax Division, Dept. of Justice, Washington, D. C., Romualdo C. Caballero, Asst. U. S. Atty., Ted Butler, U. S. Atty., El Paso, Tex., Johnnie M. Walters, Asst. Atty. Gen., Joseph M. Howard, John P. Burke, Jimmy L. Tallant, Attys., U. S. Dept. of Justice, Washington, D. C., for appellant.

Joseph A. Calamia, John L. Fashing, El Paso, Tex., for appellee.

Before WISDOM, THORNBERRY, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

We consider here the question whether federally incriminating documents produced without objection in state court before the Supreme Court decided Murphy v. Waterfront Commission, 1964, 378 U.S. 52, 84 S.Ct. 1594, 12 L. Ed.2d 678, are admissible in a federal prosecution after *Murphy*. We conclude that these documents were produced under compulsion and without a waiver, and that they must therefore be excluded.

### I.

Dr. Carlos Fernandez filed a divorce suit in Texas state court in 1962. During the pendency of that action his wife served him with a subpoena duces tecum to produce his records of professional receipts for the past year. Fernandez asked his lawyer whether he could refuse to produce the records on the ground of self-incrimination. His lawyer informed him that he could not refuse to give evidence in state court even though it might incriminate him in federal proceedings. Instead, he must produce the records, or commit perjury, or refuse to produce the records and be held in contempt of court.

Fernandez produced the records in accordance with the subpoena. On that occasion, the books were returned to him without examination. He dismissed that divorce action over opposition and filed another action the same year. Again, he received a subpoena duces tecum directed to the records, and again he asked his lawyer whether a claim of self-incrimination would protect him. Fernan-

dez's lawyer gave him the same answer as before, and Fernandez produced the records. This time, with the court's permission, his wife's lawyer made a copy of the entries.

During a routine audit in 1964, an agent of the Internal Revenue Service uncovered the existence of the copy while examining state court records. He obtained it from a stenographer who had recorded one of the hearings. The Government now prosecutes Fernandez for the filing of false income tax returns for 1961 and 1962 in violation of 26 U.S.C. § 7206(1).

During the interval between the time that Fernandez surrendered his records in state court and the IRS secured and used the copy that had been made, the Supreme Court decided Murphy v. Waterfront Commission, 1964, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678. That case held that "a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him". 378 U.S. at 79, 84 S.Ct. at 1609. To carry out the rule and to "accommodate the interests of the State and Federal Governments in investigating and prosecuting crime", the Court determined to prohibit the federal government "from making any such use of compelled testimony and its fruits". *Id.*

Fernandez now seeks to suppress the exhibit which the agent obtained from the state court records. The district court granted his motion and the United States appeals.

## II.

The Government maintains that Fernandez's conduct in 1962 constituted a waiver of the plea of self-incrimination. The question, however, is not whether Fernandez waived his right to assert the plea with regard to the 1962 state proceedings, but whether his conduct then precludes him now from asserting the claim in federal proceedings.

The district court concluded that Fernandez was "compelled" to divulge his records. Certainly that finding is supported by competent evidence. Fernandez was faced with a subpoena. Texas law sustained its enforceability without regard to a plea that incrimination in federal courts would follow. See Ex parte Copeland, 91 Tex.Cr.R. 549, 240 S.W. 314 (1922); 1 McCormack & Ray, Texas Law of Evidence § 425 (2d Ed.1956). Supreme Court precedent supported the constitutionality of the practice. Knapp v. Schweitzer, 1958, 357 U.S. 371, 78 S.Ct. 1302, 2 L.Ed.2d 1393; Feldman v. United States, 1944, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408. The trial court found and the evidence shows that Fernandez would not have produced the documents if he could have raised the claim. Since it would have been "useless to raise the self-incrimination issue at the time of [the divorce] trial", we conclude that Fernandez did not waive the privilege. Shoffeitt v. United States, 5 Cir.1968, 403 F.2d 991, cert. denied, 1969, 393 U.S. 1084, 89 S.Ct. 868, 21 L.Ed.2d 777.

Waiver is the intentional abandonment of a *known* right or privilege. Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L.Ed. 1461, 1466. We do not find a waiver in Fernandez's pursuit of the divorce proceedings. *See* Simkins v. Simkins, Fla.Ct.App.1969, 219 So.2d 724. A finding of waiver would imply that Fernandez should have sacrificed his right to pursue the divorce action in state courts in order to protect his records from disclosure. It is true that in civil cases state courts frequently impose a sanction when one of the parties withholds on self-incrimination grounds an important part of the evidence. This may sometimes be necessary to protect the interests of the other party. *See* Note, Use of the Privilege Against Self-Incrimination in Civil Litigation, 52 Va.L.Rev. 322 (1966). But we cannot say here that the proper sanction would have been outright dismissal of the suit, the only alternative by which Fernandez could protect his records under pre-*Mur-*

*phy* law. We cannot imply waiver where Fernandez was faced with so expensive an alternative.

Now, at his first opportunity, when the evidence is to be used against him in federal proceedings, Fernandez has advanced his plea of self-incrimination. We consider that the plea is timely made.[1]

### III.

Since we conclude that the district court correctly determined that Fernandez had not waived his rights, we must also consider its determination that *Murphy* requires the exclusion of his records upon a properly advanced plea. The Government contends that this amounts to a holding of retroactivity for *Murphy* and that such a holding is unwarranted.

The district court's decision did not accord retroactivity to *Murphy*. *Murphy*, decided in 1964, promulgated an exclusionary rule for the federal courts in cases of compelled testimony in state courts. It is not a retroactive holding to carry out that rule as to proceedings in 1969. A holding of retroactivity for *Murphy* would involve the vacating of pre-*Murphy* federal convictions based on incriminating evidence[2] produced in state courts or, in this case, a vacating

of the original divorce proceedings because of inadmissible evidence.

The issue, simply stated, is whether *Murphy's* exclusionary rule applies here. Application of the rule does not serve *Murphy's* purpose of facilitating the accommodation of state and federal interests in prosecuting crime, for only a civil suit was involved in the state proceedings, without a significant state interest in compelling disclosure. In the normal post-*Murphy* civil suit, a legitimate claim of self-incrimination is generally honored and no disclosure ordered. *See* Note, Use of the Privilege Against Self-Incrimination in Civil Litigation, 52 Va.L.Rev. 322 (1966). *Murphy* contemplated proceedings where the state demonstrated its interest in obtaining the disclosure by promising immunity from state criminal action. Furthermore, even had there been a compelling state interest in the disclosure in 1962, there was no occasion for the state to exercise its judgment whether to pursue the matter, for at that time Fernandez's disclosures were admissible in federal court. *See* Feldman v. United States, *supra*.

But *Murphy's* rationale is broader than the protection of state criminal investigation interests. Its exclusionary rule was also designed to give substantive effect to the privilege against self-incrimination.[3] Thus,

---

1. This conclusion is not inconsistent with United States v. Kordel, 1970, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1. In that case the federal government had brought both the original civil action and the criminal action. As the Supreme Court pointed out, the defendant in answering the interrogatories "[w]ithout question * * * could have invoked his Fifth Amendment privilege against compulsory self-incrimination".

2. Mackey v. United States, 7 Cir. 1969, 411 F.2d 504, a case heavily relied upon by the Government, was such an instance. There, a defendant had been convicted of income tax evasion partly on the basis of wagering tax returns he had filed. But both the filing of the wagering tax returns and the conviction for income tax evasion had occurred prior to the decisions in Marchetti v. United States, 1968, 390

U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 1968, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906. The Seventh Circuit decided that it would not give retroactive effect to those cases in such circumstances. On the other hand, this Court has accorded retroactivity to *Marchetti* and *Grosso* where the offense was the very failure to file the returns. United States v. Lucia, 5 Cir. 1969, 416 F. 2d 920, aff'd *en banc*, 5 Cir. 1970, 423 F.2d 697.

3. The majority decision in *Murphy* is perhaps cryptic in this regard. *See* The Supreme Court, 1963 Term, 78 Harv.L.Rev. 229 (1964). But Mr. Justice Harlan, concurring in the judgment, interprets the opinion as relying on a constitutional basis rather than upon the Court's supervisory power over federal courts. Even if the supervisory power were the rationale

where testimony has been effectively compelled from a witness in state court, its admission in a federal suit produces the very injury against which the privilege should protect: incrimination.[4] We conclude that to allow the use of Fernandez's records to incriminate him now, six years after *Murphy*, would directly conflict with that principle.

We affirm the judgment of the district court.

---

for the exclusionary rule, however, *Murphy* would prohibit "permitting federal officials to make prosecutorial use of testimony which a State has compelled when that same testimony could not constitutionally have been compelled by the Federal Government and then used against the witness". 378 U.S. at 91, 84 S.Ct. at 1624, 12 L.Ed.2d at 702 (Harlan, J., concurring).

4. *Cf.* United States v. Knox, 1969, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275, where the Supreme Court endorsed the result in United States v. Lookretis, 7 Cir. 1968, 398 F.2d 64. There, the defendant had made truthful disclosures under statutory compulsion before the decision in *Marchetti*. The Seventh Circuit concluded that these disclosures could not be used against their maker in a criminal proceeding.