### Luther Hughes v. The State.

#### No. 1014.   Decided March 8, 1911.

#### Rehearing Denied May 10, 1911.

#### 1.—Assault to Murder—Recognizance—Reinstatement.

Where, upon appeal from a conviction of aggravated assault, the recognizance failed to show the punishment assessed, or the court in which the defendant was tried and before which he obligates himself to appear, the same must be dismissed on motion of the State. However, where the appellant filed a proper recognizance, the case was reinstated.

#### 2.—Same—Charge of Court—Deadly Weapon—Serious Bodily Injury.

Where, upon trial of assault to murder, the defendant being convicted of aggravated assault, the testimony showed that serious bodily injury was inflicted upon the person assaulted, there was no error in the court's failure to properly define a deadly weapon.

#### 3.—Same—Charge of Court—Aggravated Assault.

Where the party was convicted of aggravated assault he could not complain of the court's refusal to submit a requested charge on aggravated assault; besides the charge of the court was sufficient.

#### 4.—Same—Identity of Defendant—Evidence—Declaration of Third Party.

Upon trial of assault with intent to murder where the defendant's identity was an issue, testimony as to what the father of the defendant had said with reference thereto in the absence of the defendant was inadmissible.

#### 5.—Same—Conduct of District Attorney—Immunity of Witness.

Where, upon trial of assault to murder, the State's counsel had not filed in the court an unconditional agreement not to prosecute a witness, he could not compel him to testify whether he or his brother committed the assault, and a conditional agreement without the approval of the court was insufficient, and it was reversible error for State's counsel to insist before the court and jury that the witness must answer the questions.

Appeal from the District Court of Potter.   Tried below before the Hon. J. N. Browning.

Appeal from a conviction of aggravated assault; penalty, a fine of $750 and two years confinement in the county jail.

The opinion states the case.

*Cooper, Merrill & Lumpkin,* for appellant.

*C. E. Lane,* Assistant Attorney-General, and *H. S. Bishop,* District Attorney, for the State.—On the question of compelling a witness to

answer on ground of nonself-incrimination: Floyd v. State, 7 Texas, 215; Ex parte Park, 37 Texas Crim. Rep., 590.

HARPER, JUDGE.—Appellant was indicted for assault with intent to murder. Upon a trial he was convicted of aggravated assault.

The Assistant Attorney-General has filed a motion to dismiss this appeal, because of the insufficiency of the recognizance in that it fails to show the punishment assessed, and fails to show the court in which the defendant was tried and before which he obligates himself to appear.

In the case of Thompson v. State, 35 Texas Crim. Rep., 505, Judge Henderson, rendering the opinion, says: "The appellant's recognizance, omitting the prior portions, recites, 'and who has been convicted of said offense in this court shall appear from day to day and from term to term of the same and not depart without leave of this court.' It will be observed that this obligation does not specify the court before which the appellant 'shall appear from day to day.' The statute requires that this shall be done. Looking upon the terms of this instrument, the principal may as well be required to appear before this court as before the court of conviction, and it is patent that no court is specified before which he is to appear. For this reason we are of opinion this recognizance is fatally defective."

The motion is sustained, and the cause dismissed.

*Dismissed.*

HARPER, JUDGE.—In this case the defendant was charged with assault with intent to murder. Upon a trial he was convicted of aggravated assault and his punishment assessed at a fine of $750 and two years confinement in the county jail. At a former day this case was dismissed because of insufficiency of the recognizance. Defendant has since filed a recognizance in legal form and asks that the case be reinstated, and it is so ordered.

The assault, as far as the testimony shows, was unprovoked and the prosecuting witness dangerously and seriously wounded. There is complaint in the record that the court did not properly define "deadly weapon," as applicable to the facts of this case, but it is immaterial in that the testimony of all the witnesses shows that serious bodily injury was inflicted upon the person assaulted. He was struck on the side of the head with the larger end of a billiard cue; his skull fractured so that pieces of the bone had to be taken out, and the injured party was confined to his bed for a number of days.

The complaint that the court failed to give charge No. 1, requested, is not well taken. The court in the charges given instructed the jury that they could not convict unless the party making the assault did so with the intent to kill, and as the jury found the defendant guilty

of only aggravated assault, it would not be material. We think the charge on aggravated assault, when we take the entire charge into consideration, was full and complete as applicable to the testimony in this case.

The matters, however, complained of in the second and following bills of exception present a serious matter. The issue in the case was the identity of the defendant. It appears that he has a twin brother named Lucian Hughes, and it appears that those who have known them from childhood were unable to testify which one of them made the assault. That one of them did do so is proven beyond peradventure of a doubt. The first witness for the State, Rollie Lewis, testified: That he knew both Luther and Lucian Hughes; that he saw someone run up and strike Mr. Short, the assaulted party; that he was in a few feet of them, and knew it was either Luther Hughes or his twin brother, Lucian Hughes; that he can not tell them apart.

Dr. D. T. Hanson testified as to the nature and severity of the wound inflicted; that the assaulted party was knocked unconscious, and the skull crushèd for about three inches in length and two and three-quarters inches in width; that he found brain tissue oozing from the hole, and the scalp was opened and a piece of bone taken out. He did not know who inflicted the injury. A. B. Short, the injured person, testified: He did not know who it was struck him; he had seen the man a few moments before, but not well enough to identify the defendant as the man. Joshua Brown testified he saw the man strike Mr. Short, but did not know the Hughes boys at the time, and while the man who committed the offense had on a white hat, white shirt and a pair of overalls, and he was in ten feet of them at the time, he could not identify defendant as the man. Crockett McClelland testified: I was in the pool hall, heard the lick and saw Rollie Lewis go to the injured man. I saw a Hughes boy turn and walk out the back door. I do not know which one of the Hughes struck the blow, and did not identify defendant as the man. Hugh Tolleson testified: I was in the pool hall when one of the Hughes boys assaulted A. B. Short. I have known the Hughes. boys six or seven years. I went to school with them. I can not say which one of them it was that struck Mr. Short. I do not know their names apart, but know one of them is named Luther and the other Lucian. I saw one of the Hughes boys after that in the Justice Court room. I do not know which one it was. The one that was in the Justice Court room was not the one who struck Mr. Short. Cross-examined, he said: I do not think the one in the Justice Court was the one that struck Mr. Short. I thought so by looking at him. I just had a glance of the boy in the pool hall. K. K. Kerr testified: I am justice of the peace. I recall when one of the Hughes boys was in the Justice Court at the time spoken of by Mr. Tolleson. It was Lucian that was before me. I did not know them apart at that time, but

since then I have had them pointed out to me and I know them apart now when I see them together. Joe Tunnard testified: Both Luther and Lucian Hughes were in town the day Mr. Short was assaulted. They had both told me this guy (Mr. Short) was a spotter; they made no threat against him. Mr. Bishop testified that Luther Hughes, the defendant, was in jail at the time spoken of by Judge Kerr and Mr. Tolleson.

This is all the testimony offered by the State on the identity of the defendant as the man who committed the assault, and while it is rather meagre, we would not disturb the verdict but for the matters complained of in the bills of exception. The jury, under the law, are the judges of the weight to be given the testimony, and the testimony of Mr. Tolleson, supplemented by that of Judge Kerr and District Attorney Bishop, might be sufficient for them to find that the identity of 'defendant was sufficiently proven as the man who made the assault, but it seems the district attorney was not willing to risk his case on this evidence. While the State's witness, Rollie Lewis, was on the stand and had testified that it was one of the Hughes boys who made the assault, but could not say which one, the district attorney asked him the question: "Did you not say it was Luther Hughes within twenty or thirty minutes after this occurred?" to which question defendant objected, which objection was by the court sustained. The district attorney then asked the witness: "How long after this until you saw the sheriff, father of the Hughes boys?" to which the witness answered: "I couldn't say." Counsel for defendant objected, on the ground of its immateriality, when the district attorney said it would appear in the next question. The court then asked, "What is the object of the testimony?" and the district attorney answered: "The object is this: I want to show that the sheriff was in there and asked which way Luther (the defendant) went, and the witness told him." Before the court ruled on this the district attorney presented to the witness a paper in writing with the statement, "You signed this instrument—this statement—didn't you, Mr. Lewis?" to which the defendant objected for reasons stated in the bill, when the district attorney remarked, "I will ask some more questions directly; read that, Mr. Lewis; that is your statement made under oath the next day after this occurred, is it not?" to which proceeding defendant objected, the court remarking, "I will overrule it to the extent that it will refresh the memory of the witness—it might or might not." Mr. Bishop then said, "Read, Mr. Lewis; I will ask you if the chief of police, Mr. Snider, and Mr. Hughes (meaning J. F. Hughes, the father of the defendant and sheriff of Potter County), came to your cigar stand there the same night this offense was committed and shortly after?" to which the defendant then objected to any act on the part of anybody not in the presence of the defendant. The court then stated, " 'The way I understand your purpose, Mr. Bishop, I don't think it is admissible.' The witness did not

answer the question, but was asked by the district attorney the following, Mr. Bishop: 'All right, I will put this question: Is it not a fact that you, to refresh your memory as to which one it was, is it not a fact that shortly after the assault was committed, Mr. Lewis, to refresh your memory, that Mr. Hughes, the sheriff, and John Snider, were in there, and Mr. Hughes asked you which way Luther had gone, and you told him which way he went?' The defendant immediately objected to the question and any answer that might be elicited and requested the court not to permit the district attorney to repeat the question, as the testimony had been held by the court previously to be inadmissible, for any purpose, the court then stating to the district attorney, 'You must not do that.' The district attorney then stating, 'I think it is admissible to refresh his memory as to what he said at the time.' The court stated it would not be admissible if his mind was as fresh as mine on what we are doing now.' Mr. Bishop then said: 'If I can not show what he told the sheriff and at the time Luther"—— and was stopped by the court and not permitted to complete the sentence, and then Mr. Bishop continued, 'I will ask this question, is it not a fact that you told him which way Luther had gone out when he was seeking the man that knocked the man down?'"

The only object and purpose of the district attorney in asking these questions could be to hope by asking such questions to strengthen his case as to the identity of this defendant, by causing the jury to believe that his father believed him to be the one who made the assault, and the witness had so told the father. It could not be admissible against defendant what questions his father asked in his absence, or what the witness answered. The witness could identify defendant as the man, but this he refused to do.

We can not say that this proceeding was harmless, and the jury did not consider these matters in passing on whether it was defendant or his brother who made the assault.

Again, after the State had rested, the defendant offered no proof, when the district attorney announced, in the presence and hearing of the jury, that he would agree to hold Lucian Hughes harmless and tender him as a witness to defendant. Upon the defendant objecting to this proceeding, the district attorney then asked leave of the court to file a written agreement that he would not prosecute Lucian Hughes for this offense, and the jury was retired that the court might hear and determine what proceedings would be had. The district attorney then offered an agreement in writing, signed by him, "that if Lucian Hughes would testify fully and truthfully to all he knows about the offense," etc., that he would guarantee him absolute immunity. It does not appear that this agreement was ever sanctioned by the trial judge, or met with his approval. In fact, it affirmatively appears from the record that he did not do so, for upon the return of the jury the State was permitted to reopen its case and place Lucian

Hughes upon the stand as a State's witness, when the witness declined to answer any questions relative to this assault. If the judge trying the case had approved the agreement he had the power and he doubtless would have compelled the witness to testify, but instead of doing so, the following took place, as shown by bill of exceptions: " 'I want here and now to repeat the proposition that I am to hold him harmless.' The defendant by his counsel objected to the statement being made, objected to any proposition in the presence of the jury about the witness as binding upon the defendant for any reason and calling the court's attention to his having sustained the objection to such proposition previous to that time. The court then stated, 'I think it is bordering on territory that might be reversible error.' Mr. Bishop: 'I want to make the proposition to hold him harmless.' Court: 'I passed on that in the absence of the jury.' Mr. Bishop: 'Here is the witness before you.' Court: 'And the witness is before the jury, too, and I don't want you to go any further on it.' Mr. Bishop: 'You will not allow me to hold this witness harmless?' Court: 'It is contempt of court to proceed in that.' Mr. Bishop: 'I just simply think the court is wrong, and I want to insist on a right that the State has.' Court: 'The court disagrees with you as to that right in this instance.' " The district attorney was again seeking to establish identity of defendant by improper means.

Our Code of Criminal Procedure provides a means whereby any person can be compelled to testify as a witness. (See articles 709 and 37, Code Crim. Proc.; Ex parte Parks, 37 Texas Crim. Rep., 590; Camron v. State, 32 Texas Crim. Rep., 180; Neeley v. State, 27 Texas Crim. App., 327.) If the State will file in the court an agreement not to prosecute Lucian Hughes for making this assault, and the trial judge approves such an agreement, then Lucian Hughes can be compelled to testify in this character of case. But all such proceedings should be had out of the presence and hearing of the jury, until it is determined that this immunity will be given. The agreement offered by the State's attorney was a conditional agreement, and left him to be the judge as to whether the witness had testified "truthfully," and as it did not meet with the sanction of the court, it should not have gone to the jury. No one can tell what effect it may or may not have had in causing the jury to determine which one of the twin brothers made the assault. If legitimate testimony was conclusive on this point of identity, this might be immaterial, but, as hereinbefore stated, the testimony on this point was meagre, and evidently the district attorney was seeking to strengthen it by this means. When the court said: "I think it is bordering on territory that might be reversible error," he should have stopped the district attorney and it appears he tried to do so but failed in his efforts.

We will not discuss the motion for a continuance, or the other

matters, as they will not likely occur on another trial. For the errors pointed out this cause will be reversed and remanded.

*Reversed and remanded.*

[Rehearing denied May 10, 1911.—Reporter.]