EX PARTE JESSE NAPOLEON.

No. 1700.  Decided February 14, 1912.

**1.—Contempt—Witness—Grand Jury—Lottery—Immunity.**

Before a witness can be compelled to give evidence about any matter which would incriminate him, he must be assured by the proper officials in a legal manner that he will not be prosecuted for such offense. Davidson, Presiding Judge, holding that he can not be compelled to so testify even if immunity is promised.

**2.—Same—Practice on Appeal.**

Where the record did not disclose that relator objected to answering the questions with reference to lottery tickets, on the ground that it would incriminate him, either in the District Court or before the grand jury, but set up such grounds in his application for writ of habeas corpus, he must be discharged.

From Dallas County.

Original habeas corpus proceedings asking release from commitment under contempt proceedings for refusing to answer questions before District Court and grand jury.

The opinion states the case.

*Lively, Nelms & Adams,* for relator.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—In this case the relator was fined for contempt by the Criminal District Court of Dallas County, and his punishment assessed at a fine of one hundred dollars, and in addition thereto he was ordered confined in the jail of Dallas County until he should answer certain questions propounded to him by the grand jury of that county. A writ of habeas corpus was granted by this court.

It appears from the record that the grand jury made the following report to Judge Miller: "We have asked Jesse Napoleon, a witness before us, after he was duly sworn, the following questions: 'Where did you get the policy tickets found in your possession January 4, 1912? From whom did you get them? Who pays you for selling them?' All of which questions he refuses to answer except to say he don't know. Joe Wilson, Foreman of the Grand Jury."

Judge Miller then asked the witness some questions, among which were: "You say you do not know where you got those tickets that you had in your possession?" to which the witness answered he did not know. Other questions were propounded, but which we do not deem necessary to repeat here, for if the questions were proper questions, and the witness could be required to answer them, the relator would be guilty of contempt when he admitted to the judge that he had refused to answer the questions propounded by the grand jury. Our Penal Code provides in article 374, that "if any person shall sell, offer for sale or keep for sale any ticket or part of ticket in any lottery, he shall be fined not less than $10 nor more than $50." It is thus seen that if the relator had the tickets for sale, he would be guilty of an offense under our laws, and the question, "Who pays you for selling them?" if answered by the witness, that any person paid him for selling the tickets, would render him liable to a criminal prosecution. And it further appears by the record that when the judge required the witness to answer questions propounded by him, that the witness did have the tickets for sale, and was being paid for selling them. Under these circumstances could the witness be required to answer the question, or would he be guilty of contempt of court in refusing to do so?

This question is fully discussed in the cases of Ex parte Park, 37 Texas Crim. Rep., 590, and Ex parte Wilson, 39 Texas Crim. Rep., 630, and we do not deem it necessary to enter into a lengthy discussion of it here. It does not appear when the witness was before the grand jury, or before the judge, that he claimed his privilege under section 10 of the Bill of Rights, but in the application before this court he states, that if required to answer the question it would render him liable to a criminal prosecution, and the record as agreed on between State's counsel and relator, filed in this court, conclusively shows such to be the fact—that he had the tickets for sale for a Mr. George, and was to receive twenty percent of the proceeds for selling them. The question propounded, "Who pays you for selling them?"

necessarily implied a criminal connection with the transaction for which relator could be prosecuted. As is said in the Ex parte Parks case, by a guarantee of immunity on the part of the court to the witness against any prosecution for any offense about which he was called on to testify, the witness could be compelled to give evidence, but in this case it does not appear that this guarantee was given to the witness. Before a witness can be compelled to give evidence about any matter which would incriminate him, he must be assured by the proper officials, in a legal manner, that he will not be prosecuted for such an offense—be guaranteed immunity from prosecution in such a manner that such guarantee would be a complete defense if he should be prosecuted. The officers of the State assisting the grand jury knew that an answer to the question would probably incriminate the witness, and before seeking to compel him to answer it, immunity from punishment should have been extended to him, and in the absence of such immunity being given, it would be violative of the provisions of our Constitution to punish him for refusing to answer the question. (Ex parte Wilson, 39 Texas Crim. Rep., 630.)

As hereinbefore stated, the question arising in this case has been so fully discussed in the case of Ex parte Parks, supra, and Ex parte Wilson, supra, that it is unnecessary to discuss the issue in this case, and it was held that before a witness can be required to answer any question that would incriminate him, he must be guaranteed immunity from punishment. The officers not offering relator immunity from punishment, and the question asked being such that an answer thereto would necessarily incriminate him and render him liable to criminal prosecution, he was not compelled to answer the question until immunity from punishment was guaranteed to him. If the record disclosed that he was guaranteed immunity from punishment for the offense about which he was being questioned, we would hold that he would be compelled to answer the questions. The record not disclosing relator objected to answering the questions on the ground that it would incriminate him either in the District Court or when he was before the grand jury, but in the application before this court such ground being alleged and claimed, the relator will be discharged upon the payment of all costs incurred in this prosecution.

Relator is ordered discharged upon the conditions named herein.

*Relator discharged.*

DAVIDSON, PRESIDING JUDGE.—I agree to the result reached. The applicant, however, can not be forced to testify against himself, immunity or no immunity, in this character of case. I will file my views later in connection with what Judge Harper says of the Parks and Wilson cases.

DAVIDSON, PRESIDING JUDGE (dissenting).—I concur with my brethren in discharging applicant from custody. I can not, however,

agree with the proposition announced by them, that the State may guarantee immunity from prosecution as a basis of forcing the citizen to criminate himself, or compelling him to testify against others in matters in which he is criminally liable. The Constitution, article 1, section 10, expressly inhibits such compulsion.

The cases of Ex parte Park, 37 Texas Crim. Rep., 590, and Ex parte Wilson, 39 Texas Crim. Rep., 630, do not sustain the majority opinion. The Park case expressly holds that a witness can not be required to answer questions incriminating himself, and discharged the applicant from custody. The Wilson case is as fully emphatic in the holding as is the Park case. The applicant was discharged in that case. In the Park case, supra, after quoting article 709, White's Code of Criminal Procedure, it is said: "This would seem to imply the power on the part of the State to dismiss a case against a defendant, and require his testimony. Of course, such dismissal must be with the guaranty to the witness on the part of the court against any other or further prosecution for the same offense; and this statute has been so construed. See Camron v. State, 32 Texas Crim. Rep., 180; Neeley v. State, 27 Texas Crim. App., 324; Fleming v. State, 28 Texas Crim. App., 234."

An inspection of the cases cited in the Park case shows that in each case there was an agreement with the witness to testify upon guaranteed immunity from prosecution. No case has been cited, and I believe none can be found in Texas, holding that a witness can be forced to testify against his confederates in a criminal prosecution, unless he has agreed so to do. He can not even then be forced to testify. If he agrees to do so upon promise of immunity and fails or refuses to carry out his agreement, he may be prosecuted in the case in which he made the agreement. Neeley v. State, 27 Texas Crim. App., 324; Nicks v. State, 40 Texas Crim. Rep., 1; Ex parte Park v. State, 37 Texas Crim. Rep., 590; Stevens v. State, 42 Texas Crim. Rep., 154. The State may hold the indictment against him until he has complied with the agreement. Ex parte Greenhaw, 41 Texas Crim. Rep., 278, and other cases cited, supra. In the Camron case, 32 Texas Crim. Rep., 180, an agreement made with the prosecution was required to be fulfilled. It was further held that where the State has made such agreement and the witness has complied with its terms, he is entitled to immunity. But in no case has it been held that the witness can be *compelled* to testify to any fact which would incriminate him. He may agree to do so, and if he fails or refuses, he may be prosecuted as if he had not entered into such agreement.

With the constitutional inhibition and guaranty that he shall not be compelled to give evidence against himself, it is not readily to be comprehended how it is to be held that the State can force the witness to testify against himself even by agreeing not to prosecute. The witness may testify if he chooses, but it is a matter within his dis-

creton to be controlled by him and not by the prosecuting officers. The citizenship of this State do not hold their guaranteed and reserved rights at the option or dictation of prosecuting officers. That there should be no question in regard to the sacredness of these rights, it was ordained in article 1, section 29, that "to guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all, laws contrary thereto, or to the following provisions, shall be void."

This would seem to be sufficiently plain, emphatic and inhibitive to let it be known that we have reserved to ourselves these rights and placed them beyond usurpation by any or all departments of government.