People of the State of Illinois, Defendant in Error, v. Christine Conzo, Plaintiff in Error.

Gen. No. 40,622.

Opinion filed October 25, 1939. Rehearing denied November 9, 1939.

Harold J. Dalton and Lloyd C. Moody, both of Chicago, for plaintiff in error.

Thomas J. Courtney, State's Attorney, for defendant in error; Edward E. Wilson, John T. Gallagher, Melvin S. Rembe and Blair L. Varnes, Assistant State's Attorneys, of counsel.

Mr. Justice Burke delivered the opinion of the court.

The plaintiff in error, Christine Conzo, in response to a subpoena, appeared before the grand jury in Cook county on January 10, 1939. After she was sworn as a witness and after giving her name and address, she declined, "on advice of counsel," to answer further questions. She was then served with another subpoena, which required her to appear on the following day. At that time, accompanied by the grand jury, she appeared in open court. The record recites that the grand jury was considering a matter entitled, *People of the State of Illinois v. Francis J. Kennedy, Edward A. Fisher and Hubert Heintz;* "that said matter was on hearing before the grand jury for investigation to determine whether or not the aforementioned had conspired with each other to obstruct justice; that . . . the respondent herein was duly served with a subpoena to appear before the grand jury to give evidence and the truth to speak concerning a certain complaint before said grand jury against Francis J. Kennedy, Edward A. Fisher and Hubert Heintz." A court reporter employed by the State's Attorney testified that a document he produced, and which was admitted into evidence, was a correct transcription of the proceedings before the grand jury. In the proceedings before the court in the presence of a grand jury on January 11, 1939, respondent was called as a witness and after giving her name and address, admitted that she answered before the grand jury as set out in the transcript. She then told the court that she had refused

and was refusing to answer the questions on the ground that the answers would tend to incriminate her, and that she stood on her constitutional rights. After having been sworn by the court, she persisted in refusing to answer, whereupon the court found her guilty of contempt of court "for failure to answer questions before the regularly impaneled January grand jury," and sentenced her to confinement in the county jail for a period of 30 days. To reverse the judgment, she has sued out a writ of error.

The questions which she refused to answer, were as follows:

"Q. Do you know Francis J. Kennedy?

"Q. I might tell you now, Miss Conzo, that whatever questions we put to you at this time your answers will not incriminate you, and I want to further advise you that you have no right to refuse to answer questions put to you before the Grand Jury and that if you refuse to answer these questions you subject yourself to punishment for contempt to the Criminal Court of Cook County, and I further wish to advise you, Miss Conzo, that none of these questions that are being put to you are being put to you for the purpose of having you incriminate yourself; we do not want you to incriminate yourself. Now, I again ask you, do you know Francis J. Kennedy, the lawyer?

"Q. How long have you known Francis J. Kennedy?

"Q. Have you ever seen Hubert J. Heintz?

"Q. Were you with Francis J. Kennedy in the presence of Hubert Heintz?

"Q. Did you ever see Hubert Heintz at the Majestic Hotel in the City of Chicago?

"Q. Were you in an automobile with Francis J. Kennedy and Hubert Heintz in the month of November, 1938?

"Q. Were you in an automobile with Francis J. Kennedy and Hubert Heintz in the month of Novem-

ber, 1938, and did Francis J. Kennedy ask you to purchase some Marchands hair bleach or dye?

"Q. Did Francis J. Kennedy give you any money with which to purchase Marchands hair bleach or dye?

"Q. And did you take the money and go to a drug store and give Mr. Kennedy some Marchands hair bleach or dye in the presence of Hubert Heintz?

"Q. Did you after that see Hubert Heintz in the presence of Francis J. Kennedy?"

The court asked her to point out in what respect the various answers would tend to incriminate her, which she declined to do. In making his presentation to the trial court, the State's Attorney declared that the witness was subpoenaed to appear before the grand jury "to investigate a charge that three individuals have conspired to obstruct justice and that two of these three individuals had committed certain acts which constituted, under the law, a crime of accessory after the fact to robbery."

The first point urged by respondent is that there is no crime in this State such as "conspiracy to obstruct justice." Section 139, ch. 38, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 37.120], provides that if two or more persons conspire or agree together to do any illegal act injurious to the administration of public justice, they shall be guilty of conspiracy. We are of the opinion that the grand jury, in conducting an inquiry to determine whether persons were guilty of a conspiracy to obstruct justice, were, in effect, investigating to determine whether such persons were guilty of a conspiracy to obstruct the administration of public justice. The grand jury is a necessary constituent part of a court having general criminal jurisdiction. The grand jury's power to inquire into all offenses against the criminal law is original and complete and extends to all offenses that may come to its knowledge from any source. (*People v. Sheridan,* 349 Ill. 202, 207.) It is true that a grand jury has no right to conduct an in-

vestigation into the personal affairs of citizens when there is no charge of a criminal offense involved. In the absence of any showing to the contrary, it will not be presumed that the grand jury considered and acted upon matters not properly before it. Respondent further contends that the record does not show that the crime that the grand jury was investigating at the time she was subpoenaed to testify, was committed in Cook county. We find that the record establishes that the grand jury was investigating to determine whether a crime was committed in Cook county, and that it had the right to subpoena the respondent to testify.

Section 10 of article 2 of the Constitution of Illinois, which article is commonly known as the Bill of Rights, provides that "no person shall be compelled in any criminal case to give evidence against himself." Article 5 of the Bill of Rights of the Federal Constitution provides that "no person shall be compelled in any criminal case to be a witness against himself." Respondent insists that under the quoted language of the Bill of Rights of the State and Federal Constitutions she could not, under the circumstances disclosed by the record, be found guilty of contempt of court for failing to answer the questions which she contends would tend to incriminate her. The People suggest that she is guilty of contempt because she declined to answer virtually all of the questions. A reading of the commitment order convinces us that she was found guilty of contempt because she failed to answer the questions and not because she failed to answer certain of the questions. In *People v. Newmark,* 312 Ill. 625, the same suggestion was made, which the court disposed of by saying, p. 635, "Grant that there are questions which plaintiff in error could have answered without endangering himself, he is under commitment for refusal to answer all of them. It was one examination relating to one subject, and the questions culminated in an effort to show his connection with obstructing the administration of

justice. Where there is a series of questions, a conviction for contempt of court for refusing to answer the questions cannot be sustained by picking out one question which could have been safely answered. If answers to any of a series of questions would have a tendency to subject the witness to criminal prosecution he is entitled to remain silent as to all of them.''

Respondent asserts that a witness cannot be compelled to give incriminating evidence where the State's Attorney has made a promise of immunity. In the case at bar the record does not show that the State's Attorney made a promise of immunity. He merely expressed an opinion that the answers which she would give would not incriminate her, and that the questions were not being put to her for the purpose of having her incriminate herself. We agree with the contention of respondent that even if the language of the State's Attorney could be construed as promising her immunity from prosecution, nevertheless such promise of immunity would not affect her right to refuse to answer on the ground that her answers would incriminate her. For the crime that was under investigation, there is no statute permitting the court to grant immunity. Where, however, a witness answers on a promise of immunity by the State's Attorney, he cannot thereafter be punished for the crime or crimes disclosed by such testimony. (*People v. Bogolowski,* 317 Ill. 460; *People v. Bogolowski,* 326 Ill. 253.) The ground on which immunity, where promised by the State, must be given, and where the party has testified as promised, is, that the dignity of the State requires that it keep faith with its promises. In *People v. Rockola,* 339 Ill. 474, 478, the court said:

''It is, however, quite another thing to say that because the State's attorney offers immunity the witness or the accused must give evidence which incriminates him, or to say that even though he had agreed so to do he is bound to keep that agreement. . . . The privilege

of a witness to refuse to give evidence tending to incriminate him is granted by the constitution as one of his safeguards of personal liberty. The question, when attempt is made to compel him to testify, is not as to what he may have previously said, but whether his answers on the witness stand will have a tendency to expose him to a criminal charge or penalty, though, if he answers on promise of immunity by the State's attorney, he cannot thereafter be punished for the crimes disclosed by that testimony.''

Respondent argues that she was denied due process of law because the grand jury was present in the court room at the time of the contempt hearing. We are unable to perceive how the presence of the grand jury could be construed as a deprivation of any rights. In fact, the approved practice is for the grand jury to come in before the court and report the situation to the court. As heretofore stated, the grand jury is a constituent part of the court. In *People v. Sheridan, supra,* the Supreme Court held that in a case such as the one at bar, it is unnecessary to file a petition or make a formal charge by affidavit in order that the court might punish for contempt. We, therefore, find that the presence of the grand jury in the court room at the time of the contempt hearing was entirely proper, and that such presence certainly did not in any way deny her due process of law.

The final and essential proposition for us to determine is whether the respondent was justified in declining to answer the questions propounded. In speaking of section 10 of the Bill of Rights, the Supreme Court in *People v. Newmark, supra,* said: ''This is an ancient principle of the law of evidence and appears in every constitution written by the people of this country. It is a principle fortified by a long and uniform course of judicial decisions and has its foundation in natural justice. When a proper case arises this provision of our constitution should be applied in a broad and liberal

spirit, in order to secure to the citizen that immunity from every species of self-accusation implied in the brief but comprehensive language which is expressed. . . . A witness cannot claim the privilege of silence for a purely fanciful or sentimental reason or for purposes of securing from prosecution some third person who is interested in concealing the facts to which the witness could testify, (*People v. Spain, supra,*) but if the proposed evidence has a tendency to incriminate the witness or to establish a link in the chain of evidence which may lead to his conviction, or if the proposed evidence will disclose the names of persons upon whose testimony the witness might be convicted of a criminal offense, he cannot be compelled to answer. . . . While it is not enough for a witness to say that an answer will incriminate him, and while it must appear to the court, from all the circumstances, that there is real danger to the witness, he has the right to decide where the question is doubtful." In *People v. Boyle,* 312 Ill. 586, 596, the court quoted with approval the language of Chief Justice COCKBURN in *Regina v. Boyes,* 1 B. & S. 311, as follows:

" 'To entitle a party called as a witness to the privilege of silence, the court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer. . . . If the fact of the witness being in danger be once made to appear, great latitude should be allowed to him in judging for himself of the effect of any particular question.' "

In *People v. Spain,* 307 Ill. 283, 289, the Supreme Court said:

" . . . the constitutional provisions quoted should be applied in a broad and liberal spirit in order to secure to the citizen that immunity from every species of self-accusation implied in the brief but comprehensive language in which they are expressed. . . . The

security which they afford to all citizens against the zeal of the public prosecutor or public clamor for the punishment of crime should not be impaired by any narrow or technical views in their application to such a state of facts as appears from the record before us. Proceedings before a grand jury are within the meaning of these constitutional provisions. . . . Of course, a witness cannot claim the privilege of silence for a purely fanciful or sentimental reason or for the purpose of securing from prosecution some third person who is interested in concealing the facts to which the witness could testify. Every good citizen is bound to aid in the enforcement of the law, and has no right to permit himself, under the pretext of shielding himself, to be made the tool of others who are desirous of seeking shelter behind his privilege. . . . In the famous Burr trial, Chief Justice Marshall said he understood the true rule to be this: 'It is the province of the court to judge whether any direct answer to the question which may be proposed will furnish evidence against the witness. If such an answer may disclose a fact which forms a necessary and essential link in the chain of testimony which would be sufficient to convict him of any crime, he is not bound to answer it so as to furnish matter for that conviction. In such case the witness must himself judge what his answer will be, and if he say on oath that he cannot answer without accusing himself he cannot be compelled to answer.' In the same case he said further: 'Many links frequently compose that chain of testimony which is necessary to convict an individual of a crime. It appears to the court to be the true sense of the rule that no witness is compelled to furnish any one of them against himself. It is certainly not only a possible but a probable case that a witness by disclosing a single fact may complete the testimony against himself, and to a very effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required

for his conviction. That fact, of itself, would be unavailing, but all other facts without it would be insufficient. While that remains concealed in his own bosom he is safe, but draw it from thence and he is exposed to prosecution. The rule that declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description.' The rule is firmly established that if the proposed evidence has a tendency to incriminate the witness or to establish a link in the chain of evidence which may lead to his conviction, or if the proposed evidence will disclose the names of persons upon whose testimony the witness might be convicted of a criminal offense, he cannot be compelled to answer. . . . While it is not enough for a witness to say that an answer will incriminate him, and while it must appear to the court, from all the circumstances, that there is real danger to the witness, the witness has the right to decide, where the question is doubtful. Respecting such a situation it was said in *People v. Forbes, supra:* 'The witness who knows what the court does not know and what he cannot disclose without accusing himself must in such cases judge for himself as to the effect of his answer, and if to his mind it may constitute a link in the chain of testimony sufficient to convict him when other facts are shown, or to put him in jeopardy or subject him to the hazard of a criminal charge, indictment or trial, he may remain silent.' "

The burden was not on the witness to show how the answer might tend to incriminate her. To require that to be done would in many cases defeat the claim of protection. The law does not require a witness to explain in the first instance how his answer will incriminate him or tend to do so, because the explanation itself would or might deprive him of the protection. (*Smith v. People,* 20 Ill. App. 591, 594.)

From the above authorities we conclude that a witness cannot arbitrarily decline to testify merely because

he states that such testimony would tend to incriminate him. Great weight, however, will be given to the decision of the witness, particularly in a doubtful case. As pointed out in the cases, the court determines from all the facts and circumstances whether the witness is justified in declining to testify. In the instant case, we are aided very little by the record. The commitment order merely recites that the grand jury was investigating to determine whether certain persons were guilty of a conspiracy to obstruct justice. The People's brief states that two of the parties are lawyers. There is nothing in the record that so discloses. We do, however, take judicial notice of the fact that two of the parties are lawyers. The record does not disclose the nature of the conspiracy which the grand jury was investigating. It will be observed that the questions propounded to respondent required her to answer whether she knew Kennedy or Heintz; whether she was in an automobile with them; whether she met them at the Majestic Hotel; whether Kennedy asked her to purchase some Marchands hair bleach, or dye; whether Kennedy gave her any money for such purchase; whether she took the money and made the purchase and whether she came out of the drug store. Without knowing the essential facts of the transaction the grand jury was considering, we are unable to determine that the answers called for would or would not be the means of forging a chain of evidence against her. It is manifest that she was in some way involved in the transaction being investigated. We are of the opinion that under the circumstances respondent was within her rights in refusing to answer the questions. As pointed out, the commitment order fails to give us an adequate picture of the investigation the grand jury was pursuing. The commitment order should be so complete that we could, by examining the same, determine whether the refusal of the witness to answer was justified.

For the reasons stated, the judgment of the criminal court of Cook county is reversed and the cause remanded.

*Judgment reversed and cause remanded.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.