EX PARTE CAROL JEAN JOSEPH

No. 34,330.   February 28, 1962
Relator's Motion for Rehearing Overruled May 23, 1962

McDONALD, Judge, concurred.

MORRISON, Judge, dissented.

*Foreman & Walsh,* by *William F. Walsh,* Houston, for relator.

*Frank Briscoe,* District Attorney, *Samuel H. Robertson, Jr., Jon N. Hughes,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Presiding Judge.

This is an original habeas corpus proceeding attacking the validity of the order of District Judge Arnold H. Krichamer holding the relator in contempt of court for refusing to testify, and ordering the relator to be confined in jail until she purged herself by agreeing to testify.

One Michael Said Coury was on trial before Judge Krichamer, in Criminal District Court No. 4 of Harris County, for the offense of pandering. The indictment, drawn under Art. 519 P.C. as amended in 1959 (Art. 519 V.A.P.C.), alleged that on or about the 5th day of July, 1961, in Harris County, Texas, Coury "did then and there unlawfully, by means of duress, force, and by whipping and beating her about the head and body and by threatening to take her life, procure and force one Carol Jean Joseph, a female, without her consent, to remain a prostitute."

The relator herein, the female person named in said indictment, was called as a witness for the state and, being sworn, testified that she met the defendant Coury around March; had known him some eight or nine months; that she first met him at Yale Motors in Houston; saw him next three nights later at the Turf Club; next saw him a week later when she had a date and went out with him, and that up until that time she had never engaged in or been a prostitute.

She further testified that she dated Coury a few times after that but did not "discuss any sort of occupation for you".

The witness, relator herein, upon advice of her attorney, refused to answer the questions: "How long did you go with Michael Coury before you became a prostitute?" and "When was it you first became and engaged in being a prostitute?" and "When was it you first became a prostitute?" She persisted in her refusal to testify in answer to such questions after the attorney representing the state had offered her immunity and after she was informed by Judge Krichamer that she "would be granted complete immunity in any answers to questions you give except as to perjury. You will be given immunity to any answer to further questions, you will be granted immunity from prosecution."

The grounds stated by the witness, relator herein, for refusing to testify were that her testimony "might tend to incriminate her"; "might bring a moral stigma and moral degradation" upon her; "I might incriminate myself."

Art. 521 P.C. provides in part that the female shall be a competent witness to testify for or against the accused as to any act or words with him or by him with another in her presence, and that "no testimony or statement given by such female during the trial for any such offense above named shall be used against her in any criminal prosecution."

Relator stated that her answer would incriminate her as to offenses for which she was liable and for which prosecution might be brought in the county court, in justice courts and in corporation courts in Travis, Jefferson and Galveston Counties.

Relator's first contention is that the immunity offered did not constitute a complete substitute for the privilege against self incrimination provided by Art. 1, Sec. 10 of the Constitution of Texas, because there was no agreement as to immunity which would authorize the trial judge to compel her testimony.

We overrule such contention. Ex Parte Muncy, 72 Texas Cr. Rep. 541, 163 S.W. 29; Ex Parte Copeland, 91 Texas Cr. Rep. 549, 240 S.W. 314; Hughes v. State, 62 Texas Cr. Rep. 289, 136 S.W. 1068; Hinesman v. State, 34 Texas Cr. Rep. 76, 29 S.W. 482.

In Ex Parte COPELAND this Court said:

"It has long been the practice to extend immunity through the action of the district attorney with the sanction of the trial judge. Immunity so extended has uniformly been held binding upon the state. Young v. State, 45 Texas Cr. Rep. 202, 75 S.W. 23; Camron v. State, 32 Texas Cr. Rep. 180, 22 S.W. 682, 40 Am. St. Rep. 763; Barrara v. State, 42 Texas 260; Bowden v. State, 1 Texas App., 143; Fleming v. State, 28 Texas App. 234, 12 S.W. 605.

"The point is here raised that, while the state may be bound by appropriate action of the district attorney and the trial court, it is not competent for the court to compel one to give the testimony under such a guaranty, but that, notwithstanding the immunity thus tendered, he would have the right to maintain his silence. This view was rejected by this court in Hughes v. State, 62 Texas Cr. Rep. 289, 136 S.W. 1068; Ex Parte

Napoleon, 65 Texas Cr. Rep. 307, 144 S.W. 269; Ex Parte Higgins, 71 Texas Cr. Rep. 618, 160 S.W. 696; Ex Parte Muncy, 72 Texas Cr. Rep. 541, 163 S.W. 29. In these cases, it was held that by virtue of the statutes of this state, it was within the power of the district court to compel one to testify, although his testimony tends to show that he had transgressed the criminal laws of the state, where he was guaranteed immunity by the promise of the district attorney with the sanction of the trial judge duly entered of record."

Relator next contends that no statute has been enacted which would authorize the court to compel her to testify without her agreement.

In Hughes v. State, supra, the statute, now Art. 653 V.A.C.C.P., was construed as providing a means whereby any person can be compelled to testify. Referring to a witness in the assault with intent to murder case, this Court said:

"If the state will file in the court an unconditional agreement not to prosecute Lucian Hughes for making this assault, and the trial judge approves such an agreement, then Lucian Hughes can be compelled to testify in this character of case."

See also Ex Parte Copeland, supra.

Arts. 653 and 577 V.A.C.C.P., together with other provisions of the Code relating to the dismissal of a prosecution by the court upon motion of the attorney for the state, furnish all of the statutory authority necessary to empower the district attorney and the court to grant immunity to the witness and require her to testify.

The remaining contention presents the question of whether the witness could refuse to testify because she would be unprotected as to other distinct offenses concerning which she was sure to be cross-examined.

Appellant correctly points out that the authority or power to grant immunity to a witness does not extend to distinct offenses. It does, however, extend to the particular case then on trial and any connected offense which the witness, in good faith, discloses as a part thereof, though in truth the connected offense constitutes a separate crime. Ex Parte Park, 37 Texas Cr. Rep. 590, 40 S.W. 300; Hinesman v. State, 34 Texas Cr. Rep. 76, 29 S.W. 482.

The question then resolves itself into whether the witness protected by the provisions of Art. 521 P.C. and the grant of immunity could decline to answer the questions propounded to her and to testify regarding the offense against her because she was sure she would be interrogated on cross-examination and incriminate herself as to distinct offenses. We conclude that she could not.

It is not difficult to see how the relator's testimony regarding the offense for which the defendant was on trial could incriminate her. If, as the indictment suggests, she was a common prostitute, her status as such is said to be a crime of personal condition which would authorize her conviction under the vagrancy statute in any county where she might be.

We find it extremely difficult, however, to picture a situation where the relator could be required to testify on cross-examination and incriminate herself as to a separate crime totally disconnected and not disclosed as a part of the offense of causing her to remain a prostitute by whipping and beating her and threatening to take her life, on or about July 15, 1961. If such condition did exist, and the cross-examination was proper, she could then claim her privilege.

The following quotation from Wharton Criminal Evidence, taken from Ex Parte Park, 37 Texas Cr. Rep. 590, 40 S.W. 300, is deemed pertinent on appellant's last contention.

"To protect the witness from answering, it must appear from the nature of the evidence which the witness is called to give that there is reasonable ground to apprehend that, should he answer, he would be exposed to a criminal prosecution. The witness, as will be seen, is not the exclusive judge as to whether he is entitled on this ground to refuse to answer. The question is for the discretion of the judge, and, in exercising this discretion, he must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence. But, in any view, the danger to be apprehended must be real, with reference to the probable operation of law in the ordinary course of things, and not merely speculative, having reference to some remote and unlikely contingency."

Relator's confinement under the contempt order being lawful, the relief prayed for is denied and she is remanded to custody.

McDONALD, concurring.

I concur in the disposition of this case by virtue of the holding of this Court in the opinion by Judge Lattimore in Ex Parte Copeland, 91 Texas Cr. Rep. 549, 240 S.W. 314, cited in the majority opinion.

MORRISON, Judge, dissenting.

The majority concede that Article 521, supra, does not grant such immunity as would operate as a substitute for the privilege against self-incrimination guaranteed by Section 10 of Article I of our Constitution. The applicable portion of the act reads as follows:

"No testimony or statement given by such female during the trial for any such offense above named shall be used against her in any criminal prosecution."

As will be seen from 12 T.L.R. 17, 41, most of the immunity statutes of this State have been construed except the one set forth above.

A similar statute was before the Supreme Court of this State in Dendy v. Wilson, 179 S.W. 2d 269. It provided "* * * any evidence given in the (juvenile) court shall not be admissible as evidence against the child in any case or proceeding in any other court * * * ." Judge Sharp, in writing for the Court, said:

"The argument is made on behalf of the State that the Act provides express immunity to those who testify. We find no such immunity in the Act. It merely provides that evidence given in the juvenile court shall be inadmissible in another proceeding. Under the settled law, that is not sufficient. Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110; Ex Parte Muncy, 72 Texas Cr. Rep. 541, 163 S. W. 29; Ex Parte Copeland, 91 Texas Cr. Rep. 549, 240 S.W. 314."

All that Article 521, supra, does is to prohibit the re-use of testimony in a subsequent proceeding. It does not compel the witness to testify, as do other immunity statutes. *It does not prohibit the use of information gained by means of interrogating the witness,* as does the statute which was approved by this Court in Ferrantello v. State, 256 S.W. 2d 587.

Without a statute, there can be no grant of immunity. Judge Cardozo, speaking for the New York Court of Appeals in Doyle v. Hofstader, 177 N.E. 489, said:

"There is no record in the books of even a single instance, or none in any event has been brought to our attention, in which a witness, claiming privilege, has been compelled to reveal a crime upon the basis of an inherent power in the inquirer to relieve him from its consequences."

This statement by such a profound scholar would clearly outweigh the admitted dicta which may be found in Ex Parte Copeland, supra, and the dicta in Hughes v. State, 62 Texas Cr. Rep. 289, 136 S.W. 1068, by Judge Harper. In fact, in Ex Parte Muncy, supra, this Court stated that the courts had no inherent power to grant immunity. Consistent with this view are the holdings of various Supreme Courts of other states as follows: State v. Sullivan, 37 So. 2d 907; People v. Conzo, 23 N.E. 2d 210; People v. Rockola, 171 N.E. 559; Temple v. Commonwealth, 75 Va. 892; Ex Parte Werner, 124 A. 195; Apodaca v. Viramontes, 212 P. 2d 425; and Karel v. Conlon, 144 N.W. 266. See also Isaacs v. U. S., 256 F. 2d 654, 661; Hooley v. U.S., 209 F. 2d 234; Foot v. Buchanan, 113 F. 156; 3 Jones on Evidence 1652, sec. 888; 98 C.J.S. 263, sec. 439; 8 Wigmore on Evidence (3rd Ed.) 529, sec. 2284; 4 Nichols Applied Evidence 3708, secs. 61, 62.

The majority find in Article 653, V.A.C.C.P., the necessary statutory grant of immunity. It reads as follows:

"The State's attorney may, at any time, under the rules provided in this code, dismiss a prosecution as to one or more defendants jointly indicted with others; and the persons so discharged may be used as a witness by either party."

This statute was passed merely for the purpose of making one or more of the accused persons competent witnesses. When so rendered competent, the witness is like any other witness, and his right to refuse to incriminate himself is the same as that of any other witness and there is nothing in Article 653 which deprives him of such right.

Thus, even in cases where Article 653 is applicable, I fail to find anything in it authorizing the prosecutor and the court to thrust upon a witness, against his will, a grant of immunity. Saucier v. State, 156 Texas Cr. Rep. 301, 235 S.W. 2d 903, and Bills v. State, 166 Texas Cr. Rep. 28, 305 S.W. 2d 614.

Since I fail to find any statutory provision which would give the witness immunity against self-incrimination, I must neces-

sarily conclude that she was within her constitutional rights in refusing to testify.

I am not unmindful of relator's profession, the nature of the offense on trial, and the stigma attached to both, but I feel that we should construe the law as we see it with the Constitution as a guide. The Legislature may easily correct this deficiency in the law at their convenience, but it is not for this Court to do so. As Chief Justice Cardozo said in Doyle v. Hofstader, supra:

"A community whose judges would be willing to give it whatever law might gratify the impulse of the moment would find in the end that it had paid too high a price for relieving itself of the bother of awaiting a session of the Legislature and the enactment of a statute in accordance with established forms."

I respectfully enter my dissent and would order the relator discharged.