THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL ANDERSON *et al.*, Defendants-Appellants.

(No. 55381;

First District (2nd Division)—October 2, 1973.

James J. Doherty, Public Defender, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

At about 10:45 P.M. on the evening of 27 May, 1969, Charles Strong was found shot to death in alley behind 6243 S. Bishop Street in Chicago. Indictment No. 69-2028 charged Michael Anderson, Allen Spicer, Simpson Bo Clair, Douglas Streeter, Benjamin Smothers, Bruce Upton, and Leon Rushing with his murder. The trial of Smothers was severed from that of the other defendants. At the close of the State's case, Upton and Rushing were discharged upon a motion for directed finding. The defense presented no testimony. Anderson and Spicer were found guilty by a jury and sentenced from 25 to 50 years in the penitentiary. Bo Clair and Streeter were found guilty by the trial judge after having moved to have their cases decided as though their trials had been bench trials. Bo Clair and Streeter received sentences of 14 to 20 years in the penitentiary.

Eloise Young, on behalf of the State, testified that on the evening of 27 May, 1969, she, Charles Strong, Denise Anderson, and others were sitting on her back porch at 6350 S. Bishop. At about 10:30 P.M. Charles Strong fired a gun in his possession once into the ground. Shortly thereafter, two boys came to the porch. The two boys were identified by the witness in court as Allen Spicer and Michael Anderson. Spicer, who was armed, ordered Strong off the porch. When Strong complied, Spicer put his gun to Strong's head, while Anderson, who was also armed, put his gun in Strong's back. The group, consisting of the victim and his two assailants, started to walk north up the alley in the rear of the witness's home. As they were walking, Anderson pushed Strong and fired two or three shots at his feet. Further along the way, three or four other boys came out of a gangway four or five doors to the north up the alley and joined the initial group of three. The witness identified one of those boys as Smothers. The witness did not know what happened after the group got to the north end of the alley.

The testimony of Denise Anderson, who also testified on behalf of the State, was substantially identical to that of Eloise Young. She identified Spicer and Anderson, noted that both were armed, and observed Anderson fire several times at Strong's feet. The witness also identified Smothers as a member of the group of boys who later came out of the gangway. The witness did not know where Strong was taken.

The next witness for the State was Michael McInnis. The witness was seventeen years old at the time of the occurrence and had known Michael Anderson for about eight years. On the evening of 27 May, 1969, at about 10:30 P.M., the witness was at 63rd and Bishop, at which time and place he heard two shots. He ran north on Bishop to the nearest intersecting east-west alley, turned west, and ran about halfway up the alley. The

witness stated that, at this point in the alley, he did not see either Anderson or Strong.

Upon hearing this testimony, the State, claiming that it was taken by surprise, moved for leave to treat McInnis as a hostile witness. The motion was granted. The witness than admitted having answered questions during an interview by the police on 29 May, 1969. The interview had been reproduced in the form of a written statement, which statement the witness had read and signed and which he thereupon identified in court.

The assistant State's Attorney questioned McInnis whether he had been asked the following question and whether he had given the following answer:

"Q. Will you tell me where you were and what you were doing on the 27th of May at about 10:45 P.M.

A. I was on the corner of 63rd and Bishop and I heard two shots and I started to run towards my house. I was running north on Bishop and when I got to the alley on the west side of the street, I saw Shine (Anderson) standing over Chuck. I saw Shine had a gun in his hand and Chuckie say 'Don't kill me' and Shine pointed the gun at him and fired several times. After Shine fired, Chuckie didn't move again. I then ran away and went home."

The witness denied that he had given that answer to the question. The assistant State's Attorney then asked the court whether he could ask one or two more questions. The attorney for Anderson and the attorney for Bo Clair and Streeter both stated that they had no objection. The prosecutor then proceeded by way of question and answer through McInnis's entire statement of the 29th of May.

The fact that McInnis had given the statement on the 29th of May, and that he had read, verified, and signed the statement was corroborated by officer Raymond Luth, the officer to whom the statement had been given.

Benjamin Smothers, testifying on behalf of the State, stated that he was currently under indictment for the murder of Charles Strong, but had agreed to testify on advice of counsel because the State's Attorney had agreed to give him consideration in his case for testifying in this case. Smothers testified that he was in the company of Anderson, Spicer, Bo Clair, and Streeter at 63rd and Bishop at about 10:00 P.M. on the night in question. Someone stated that the "dude" that was doing the shooting was at 64th and Bishop, whereupon Spicer pulled a gun and crossed 63rd Street to go south on Bishop. Smothers followed him at a distance of about 15 feet as they proceeded south on Bishop.

Smothers testified that he did not follow Spicer all the way to 64th and

Bishop, but instead turned into a gangway leading to the alley running north-south behind the west side of Bishop. When he reached the alley, he walked south in the alley to where Spicer then was. Spicer, who had his gun at Strong's head, was pulling Strong off the porch. The witness did not see Michael Anderson at the porth. The witness could not, however, see the entire backyard or the entire porch from his position.

Smothers followed Spicer and Strong at a distance of about 10 or 15 feet as they proceeded north up the alley. Smothers was not armed and said nothing. Nobody fired any shots at this time. They walked north to the intersecting east-west alley behind the south side of 63rd Street; and then east to Bishop, north across 63rd Street, and into the east-west alley in back of the garage behind Gene's Corner, a tavern on the northwest corner of 63rd and Bishop. Spicer then told Streeter that he was giving him the opportunity to kill Strong. Bo Clair, Spicer, Streeter, and Anderson (as well as some other boys Smothers could not identify) were present when this statement was made. For the first time the witness noticed that Anderson was armed with a small pistol. Strong was then knocked to the ground by one of the group.

At this point Smothers walked away from the scene to Big Bear Liquors at 1447 W. 63rd Street (the south side of 63rd Street) and heard two shots as he was standing in the door. He turned around and walked across 63rd Street to the north side of the street where there is a vacant lot. There he saw the victim fall, after which he observed Spicer, Bo Clair, and Streeter dragging the boy down the middle of the alley. Michael Anderson ran up, stood over the victim, and fired four or five shots. Then all the boys ran. After the shooting, Smothers walked over to the victim and saw him lying face down.

Smothers testified that, in June of 1969, in the bullpen at Branch Court 49, he had a conversation with Michael Anderson during which Anderson told him that he (Anderson) had killed Strong and would do it again if he got out. Upton, Rushing, Bo Clair, Streeter, and Spicer were also present at this time. Spicer said he thought he hit Strong once or twice before he fell. Finally, Anderson said Rushing and Upton had no business being in the lockup because they had not been at the scene of the crime.

It further developed that the witness Smothers had been convicted of armed robbery in Kentucky and had carried a sawed-off shotgun for protection when he went to work. Throughout his testimony, Smothers denied that he had been acquainted with Charles Strong before Strong's death.

At the close of the State's case, Mrs. Anna Langford, the attorney for

Bo Clair and Streeter, informed the court that she had been approached by Mrs. Strong, the mother of the victim, who told Attorney Langford that she (Mrs. Strong) desired to testify. Mrs. Langford further informed the court that Mrs. Strong would testify that Smothers did know her boy before her boy's death and that she had, in fact, seen them playing basketball together. In addition, she would testify that Smothers had supplied her son with the gun he fired the night he was killed; that Smothers had on occasion gone to Michigan to get guns which he then sold to youths in the neighborhood in order to get money with which to buy whiskey; and that she felt that Smothers was responsible for what had happened to her boy.

Thereafter, the State informed the court that Mrs. Strong had, at an earlier time during the trial, brought a loaded automatic weapon with her into the courtroom, as a result of which a weapons charge was then pending against Mrs. Strong. The court then advised Mrs. Strong that it was up to her whether or not she would testify. Before she decided, the court permitted her to be interviewed by the State, at which interview any defense counsel who wished might be present. After a short interview with the assistant State's Attorney (at which none of the defense counsel chose to be present), Mrs. Strong advised the court that she did not desire to testify on the ground that she might incriminate herself in respect of the pending weapons charge against her. The court respected her decision not to testify.

*OPINION*

Defendants contend that the State failed to prove them guilty beyond a reasonable doubt. They argue that their convictions were based solely on the testimony of Benjamin Smothers, which testimony, they contend, is of little probative value because of Smother's status as coindictee and convicted felon, and because of the discrepancies between Smothers's testimony and that of Eloise Young and Denise Anderson. This contention is especially significant for Anderson, Bo Clair, and Streeter, because the only State's witness to testify to the actual killing was Smothers (who testified that Anderson stood over the victim and fired four or five times into him), and because the only testimony showing Bo Clair and Streeter as participating in the crime came from Smothers.

■■ Although it is true that a reviewing court will not substitute its judgment as to the credibility or weight of the evidence for that of the trial court or jury, nevertheless a reviewing court will review all of the evidence to determine whether it establishes the guilt of the defendant beyond a reasonable doubt. (*People v. Coulson* (1958), 13 Ill.2d 290, 149 N.E.2d 96.) And where the record leaves the reviewing court with a

grave and substantial doubt as to the guilt of the defendant, the judgment will be reversed. *People v. Lewellen* (1969), 43 Ill.2d 74, 250 N.E.2d 651.

■■ Reviewing all the evidence, we are left with no such doubt in this case. Both the jury (as to Anderson and Spicer) and the trial court (as to Bo Clair and Streeter) found the testimony of Smothers to be credible beyond a reasonable doubt, and our review of that testimony does not leave us with any grave and substantial doubt in that respect. There is no indication that Smothers was the actual killer. The mere fact that Smothers is a coindictee and former convicted felon who has been promised consideration in his own case for testifying in this case does not necessarily destroy his credibility. Despite minor inconsistencies, his testimony was substantially corroborated as to the initial stages of this incident by the testimony of Eloise Young and Denise Anderson. Both those witnesses identified Smothers as being one of the group who came out of the gangway into the alley, and their testimony also established the presence of Spicer on the porch and the fact that it was Spicer who took the victim off the porch at gunpoint. While the young ladies testified that Anderson was also then present and armed, the failure of Smothers to see Anderson is explicable by Smothers' admission that he could not see the entire vicinity of the porch and backyard from his position in the alley and that he did not look back as the group proceeded northward up the alley.

■■ Additionally relevant to the credibility of Smothers as the State's key witness is the contention that the trial court committed reversible error by respecting the decision of Mrs. Strong not to testify, thereby depriving defendants of an opportunity to impeach Smothers. As her reason for her decision not to testify, Mrs. Strong alleged that she feared, should she choose to testify, she might be placed in the position of having to incriminate herself in respect of the pending weapons charge against her. But the privilege against self-incrimination does not exist merely because the witness alleges that testimony may be adduced which may tend to incriminate the witness. (*People v. Conzo* (1939), 301 Ill.App. 524, 23 N.E.2d 210.) From the representation of attorney Langford, nothing that Mrs. Strong intended to say on direct examination (assuming its admissibility) had any relation to the pending weapons charge against her. Hence, any questions on cross-examination relating to the weapons charge would have been objectionable as beyond the scope of direct examination, and pending criminal charges are not available for purposes of impeachment. We are unable to perceive, therefore, any valid basis for Mrs. Strong's alleged fear. In view of the critical importance to defendants of Smothers's credibility and in view

of the chimerical nature of Mrs. Strong's fear, we think it was error for the trial court to defer to the decision of Mrs. Strong not to testify.

But we do not think that that error constitutes reversible error because we fail to see that Mrs. Strong's testimony (as represented to the trial court by attorney Langford), to the extent to which it would have been admissible, would have done any appreciable damage to Smothers's credibility. Specifically, Mrs. Strong would have contradicted Smother's allegation that he had not known her son prior to her son's death; but that allegation is of no substantial significance in this case, and persons who play basketball together do not necessarily know one another in the common meaning of that term. Generically, Mrs. Strong would have testified that Smothers was a bad influence in the community but without any particular focus on his community reputation for truth and veracity. It seems clear that Mrs. Strong felt that Smothers was basically responsible for her son's death (because he was a supplier of guns to her son and his contemporaries) and that Smothers was about to escape that responsibility by his testimony for the State. This generic conviction of Mrs. Strong, even if admissible into evidence, has only a remote relationship to the issue of Smothers's credibility.

Defendants' final contention is that the use by the State of McInnis's prior inconsistent statement to the police to impeach the testimony of McInnis on the stand was reversible error for the reason that such impeachment was prejudicial to Anderson in that there was the high likelihood that the jury would use the statement substantively as evidence that Anderson was the killer. The remaining defendants might then be prejudiced in that an instruction on accountability had been given and therefore any prejudice to Anderson would "rub off" on them as participants with Anderson in the killing.

■■ We note, however, that no objection was made by defendants to the State's impeachment of McInnis. On the contrary, the attorneys expressly acquiesced in the procedure. Therefore, any objection to the impeachment of McInnis has been waived. *People v. Linus* (1971), 48 Ill.2d 349, 270 N.E.2d 12; *People v. Thompson* (1971), 48 Ill.2d 41, 268 N.E.2d 369.

■■ Because the alleged error was waived, we need not and do not decide whether the impeachment of McInnis did in fact constitute error. Assuming, however, that it did constitute error, we ask ourselves whether, though waived, the error was so prejudicial as to constitute the "plain error" which we are permitted to consider under Supreme Court Rule 615. We think not. Supreme Court Rule 238 permits a party to impeach his own occurrence witness by the use of prior inconsistent statements. In addition, there was other testimony upon which the trier

932

of fact could base a finding of guilty. Furthermore, the record does not indicate that the triers of fact did, in fact, consider the statement for purposes other than impeachment. The likelihood of that happening was diminished by the fact that an instruction to the effect that the statement could be used only for impeachment was given to the jury that convicted Anderson and Spicer. With regard to the trial judge who convicted Bo Clair and Streeter, it is presumed that the judge in a bench trial considers only competent evidence in arriving at his finding unless the record affirmatively discloses the contrary.

For the foregoing reasons, the convictions of Anderson, Spicer, Bo Clair, and Streeter are affirmed.

Judgments affirmed.

STAMOS, P. J., and LEIGHTON, J., concur.